Ronald P. **EVENSEN**

v.

The **UNITED STATES.**

No. 265–79C.

United States Court of Claims.

July 1, 1981.

---

Robert Dyer, Orlando, Fla., attorney of record, for plaintiff.

Louis R. Davis, with whom was Acting Asst. Atty. Gen. Thomas S. Martin, Washington, D.C., for defendant.

Before FRIEDMAN, Chief Judge, DAVIS and SMITH,* Judges.

* Judge Smith has taken no part in the decision of this case.

1. Plaintiff likewise urges that the STAB had an insufficient number of reserve officers, and that

DAVIS, Judge:

Ronald P. Evensen served on active duty as an officer of the United States Army Reserves from March 1961 through his involuntary release as a major in January 1978. This suit for military pay challenges the validity of his nonselection by two normal promotion boards and by a Standby Advisory Board (STAB), and his consequent release from active duty. It is common ground that the original 1976 and 1977 promotion boards had before them two defective Officer Efficiency Reports (OERs) which were later voided by the Army Board for Correction of Military Records, and that Major Evensen was referred by the Correction Board for promotion consideration (for 1976 and 1977) to a STAB—which also declined to recommend him for promotion. Plaintiff moves for summary judgment, charging that the STAB's unfavorable actions were void because that board consisted of members who had previously considered him for promotion while on the 1977 regular selection board, and who then also considered him for promotion under both the 1976 and 1977 selection criteria while serving on the same STAB.[1] Defendant has cross-moved for summary judgment, and the case is ready for disposition. For the reasons now to be set forth, we deny defendant's motion and grant plaintiff's.

I

Major Evensen first failed of selection (for promotion from major to the temporary rank of lieutenant colonel) by a regular selection board in August 1976. His second nonselection came in June 1977. During the period between the 1976 and 1977 selection board actions, plaintiff appealed to the Correction Board, alleging that three OERs prepared on him between September 1967 and December 1970 were

an inadequate explanation of the omitted OERs was included in his corrected record before the STAB. It is unnecessary for us to reach those issues.

inaccurate and unfair,[2] requesting that they be voided and that his personnel file be referred to a STAB for promotion consideration and retention in the army.

By recommended decision of September 21, 1977 (subsequently adopted by the Secretary of the Army), the Correction Board decided that two of the challenged OERs should be voided because their use or retention in plaintiff's files was "in error and * * therefore unjust." One of the OERs was found inaccurate "in that, because of confusion which surrounded the preparation and submission of the report approximately nine months after the rating period ended, it appears likely that plaintiff was confused with a fellow officer." The other was ruled improper because "the rater was not [plaintiff's] immediate superior in the chain of command and was apparently not in the best position to observe and evaluate his performance." In addition to voiding these OERs, the Board decided that, as Major Evensen had requested, his corrected records should be submitted "to a duly constituted Standby Promotion Selection Board for appropriate action." In the context of this referral to the other military board, the Correction Board stated that "although removal of the aforementioned OERs may not result in the applicant's selection for promotion to the temporary grade of lieutenant-colonel, it is felt that his records should be referred to a Departmental Standby Advisory Board for consideration."

Evensen was thereafter considered for promotion, on the corrected record (deleting the two voided OERs), by a November 1977 STAB of five officers who had each been on the 1977 regular selection board which had already rejected plaintiff. This STAB considered him first for promotion under the criteria applied by the regular 1976 selection board; the very same STAB then considered him under the criteria applicable to the regular 1977 selection board. Plaintiff was not selected on either review. He was then released in January 1978, as having been twice passed over for promotion. This action was then brought.

2. The challenged OERs were also considered by the regular 1977 selection board.

II

We go directly to the cardinal vice in the composition of the STAB which twice refused to promote plaintiff after the Correction Board had referred him there—and then we discuss, in subsequent portions of this opinion, the reasons defendant gives us why we should nevertheless refrain from holding that Evensen was illegally separated from active service.

■ The core defect which controls this case is that the five STAB members had already considered plaintiff's case as members of the regular 1977 selection board (which had before it the voided OERs), and also that these same STAB members considered Evensen for promotion, on the corrected record, for both 1976 and 1977. Plaintiff contends, and we agree, that this overlapping composition of the STAB board was unfair, contrary to governing law and policy, and did not give Major Evensen his "two fair chances at promotion as required by statute and regulation." *Doyle v. United States*, 220 Ct.Cl. ——, ——, 599 F.2d 984, 997, *modified at* 221 Ct.Cl. ——, 609 F.2d 990 (1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980).

The statutory scheme for army promotion is designed to insure that such appointments are made "on a fair and equitable basis," 10 U.S.C. § 3442(c), and that laws applying to both regulars and reserves be administered in a nondiscriminatory manner, 10 U.S.C. § 277. The promotion of reserve officers serving on active duty (such as plaintiff) is governed, not by statute, but by regulations, Standing Operating Procedures (SOPs), and Letters of Instruction, as well as by the broad policies established by legislation such as sections 3442(c) and 277 *supra*.

The law is clear that with regard to regularly scheduled promotion boards for both regular and reserve officers:

[n]o officer will serve on two consecutive boards for the same grade when the second board considers any of the officers

who were considered but not selected for that grade by the previous board. [Army Reg. 624–100 § 2, 2–5b.]

*See also* 10 U.S.C. § 3297(b) (prohibition on overlapping in normal selection boards for army regulars).[3] In plaintiff's case, that regulation is not literally applicable by itself—though its general policy is plain—since we are concerned with overlapping membership between a regular selection board and a STAB and between two separate sittings on the same STAB (which separately considered plaintiff for promotion under both 1976 and 1977 selection criteria), rather than with two regularly scheduled selection boards.

However, a January 20, 1976 Standing Letter of Instruction for STABs provides that:

> The proceedings of the Standby Advisory Board (STAB) will be conducted in accordance with these instructions. To the extent practicable, the same procedures and criteria as applied by regularly constituted selection boards convened pursuant to statute and regulations to consider all officers in a particular category will be used by standby boards. Officers referred to STAB will be afforded the same or comparable consideration as was given their contemporaries by the original selection board * * *. [¶ 2].

Under this instruction (which applies to both reserves and regulars and is in harmony with sections 277 and 3442(c) *supra*), the same procedures governing regular selection boards are to be applied, "to the extent practicable," to STABs. So long as it is practicable to avoid doing so, we think that STABs were definitively prohibited from having overlapping membership like that which was so completely present in Evensen's case. We see no reason why such a policy would be impracticable for STABs, and defendant has not made any such showing or even allegation. The practice's workability is proved by the fact that the current Promotion SOP[4] explicitly prohibits the duplicative practices of this case. It continues the requirement for prior selection board experience, but adds that

> an officer who was a member of a regularly convened selection board may not serve on a STAB that is reconsidering the recommendations of that board. Additionally, STAB members may not consider officers for the same grade under two consecutive boards' criteria (*e. g.* 1977 and 1978 LTC, AUS) [lieutenant colonel, Army of the United States.] [*Id.* at ch. 7 ¶ 3(b).]

If the current policy had been in effect and followed in November 1977, it would clearly have prevented the procedures challenged in this action.

The impropriety of the policy allowing overlapping memberships on STABs was recognized in a Judge Advocate General Corps (JAGC) advisory opinion relating to the application of another officer for change in his position.[5] The opinion said that

> [t]he reconsideration of applicant's two nonselections by a single Standby Advisory Board (STAB) in November 1977 is not legally objectionable *per se*, but it could be found by the Board to have caused an injustice in that such a procedure does not substantially parallel the normal se-

---

**3.** Congress made similar provisions for the regular navy (10 U.S.C. § 5701(e)), the navy staff corps (10 U.S.C. § 5702(f)), marine regulars and reserves (10 U.S.C. § 5703(e)), the regular air force (10 U.S.C. § 8297(b)), and the inactive reserves of army (10 U.S.C. § 3362(c)) and air force (10 U.S.C. § 8362(c)). The congressional policy is a strong one.

**4.** The SOP in effect in 1976 had provided that "Standby Advisory Board members must have served as members of regularly constituted army selection boards and insofar as possible have been members of the original board for which reconsideration is being afforded." Pro-

motion SOP, ch.3, ¶ 16. The purpose of this paragraph was apparently to make sure the chosen officers were familiar with the relevant year's selection criteria and possibly with the case files of the particular officers being reconsidered. Insofar as this policy encouraged overlapping boards it was improper because of its inconsistency with relevant statutory law, the policy of the army regulations, and the general standards set forth in the January 20, 1976 Letter of Instruction discussed *supra*.

**5.** The JAGC opinion may well have involved the same STAB as considered Major Evensen.

lection process that the STAB is intended to "recreate." [JAGC opinion of December 12, 1979.][6]

The purpose of the prohibition against overlapping in boards appears obvious—in its absence partiality and prejudice could easily arise from the repeating officers' past experiences and preconceptions, and could influence not only his own decision, but also be communicated to other board members. Such a practice is particularly unfair and likely to affect adversely an officer's right to a "fair and equitable" opportunity for promotion where, as was the case here, the board was completely duplicative. We hold therefore that the composition of plaintiff's STAB violated his rights twice—once because the members of that board had already considered him while sitting on the regular 1977 selection board, and the second time when the same STAB considered him for promotion for both 1976 and 1977.[7]

Because the STAB was so fundamentally defective, its double recommendations against promotion must be voided, and cannot serve to correct the original defects in plaintiff's regular selection boards (which considered the voided OERs).

The "harmless error" rule of *Sanders v. United States*, 219 Ct.Cl. ——, ——, 594 F.2d 804, 818 (1979), is inapplicable to this defect in the composition of the STAB. *See Doyle, supra*, 220 Ct.Cl. at ——, 599 F.2d at 996. Where, as here, the defect goes to board composition, rather than to the contents of an officers OERs or files (as it did in *Sanders*),[8] automatic voiding of the passover is justified:

6. We do not agree with the JAGC's statement that this overlapping policy "is not legally objectionable *per se*". On the contrary, we think that this practice was legally erroneous (because it violated statutes, the clear purpose of a regulation, and the prevailing letter of instruction)—as well as unjust.

7. To the extent that *Coughlin v. Alexander*, 446 F.Supp. 1024, 1026–27 (D.D.C.), *aff'd without opinion*, 589 F.2d 1115 (D.C.Cir.1978), may suggest that such overlapping is permissible for standby boards of our type, we differ with that view. *See Doyle, supra*, 220 Ct.Cl. at ——, 599 F.2d at 997.

[I]t is not possible for a reviewing body to determine what effect the error had on the judgment of the original proceeding * * *. In no way can the proper influence of Reserve officers be injected into the original process, after the fact, in order to determine the effect it might have had on the judgment of the board. [*Id.*].[9]

Although *Doyle* involved the separate problem of appropriate reserve members on a promotion board, its reasoning is at least equally applicable here. *See also Ricker v. United States*, 184 Ct.Cl. 402, 396 F.2d 454 (1968) (which is directly in point). Just as in *Ricker* and in *Doyle*, the illegality in composition rendered the proceedings of the STAB board fatally defective and void. *Ricker, supra*, 184 Ct.Cl. at 407–08, 396 F.2d at 457; *Doyle, supra*, 220 Ct.Cl. at ——, 599 F.2d at 998. Plaintiff was deliberately given by the Correction Board the opportunity for fair and equitable reconsideration by a STAB, but he did not and could not properly obtain that remedy because the members of the one STAB he had were necessarily infected, first, by their prior knowledge as members of the regular 1977 selection board of the defective OERs and the prior passover, and, second, when they considered plaintiff for 1977 by their prior knowledge (as members of the 1976 STAB panel) of plaintiff's records and of their own prior decision as to his nonselection for 1976.

### III

The Government's basic answer is that (a) plaintiff did not ask the Correction Board

8. As well as in the cases following *Sanders*, e. g., *Hary v. United States*, 223 Ct.Cl. ——, 618 F.2d 704 (1980); *Grieg v. United States*, 226 Ct. Cl. ——, 640 F.2d 1261 (1981).

9. *Doyle* also said: "Where the error is the violation of a provision designed to protect against a general form of prejudice, and there is no way of determining whether actual prejudice was involved in highly subjective and secret decision-making we conclude that this right ["consideration by boards which are constituted squarely in accordance with statute and regulations"] was not had." 220 Ct.Cl. at ——, 599 F.2d at 997–98.

to void his passovers by the regular 1976 and 1977 selection boards, and (b) the Correction Board did not void those passovers. It follows, defendant says, that deficiencies in the STAB proceedings are irrelevant, the actions of the regular 1976 and 1977 selection boards still stand and cannot now be attacked in this court, and plaintiff is entitled to no judicial relief.[10] We do not accept this position.

■ First, we think that plaintiff (who acted *pro se* before the Correction Board) in addition to seeking the voiding of OERs did in effect ask the Correction Board to nullify his passovers by the regular selection boards. Major Evensen's application to the Correction Board, while it did not explicitly request that the passovers (as opposed to the OERs) be voided, asked that his case be referred to a STAB "for reconsideration for promotion and retention in the U.S. Army." The absence of a literal request that his nonselections (for periods including those covered by the defective OERs) be voided is not fatal to our finding that such relief was in fact sought. There is no magic formula for requesting this kind of relief. Though the language he used might possibly have been more definite if a lawyer had represented him, we consider that, taking into account his clear desire to be retained in the military, as well as his *pro se* status during the application stage, we should not find that he meant to, or did, waive or omit asking that the prior nonselections be voided. The fact that plaintiff explicitly requested reconsideration before a STAB is not at all inconsistent with, or exclusive of, his implicit request for voidance of the prior passovers. On the contrary, his request for reconsideration by a STAB shows that he definitely wanted reconsideration by a new board, free of the incumbrance of the prior

passovers by the regular selection boards. It would, we think, mock his application to the Correction Board to read it as somehow accepting the result of the regular selection boards which, he well knew, had considered the very OERs he sought to have the Correction Board set aside.[11]

■ Similarly, we hold that in substance the Correction Board voided the prior passovers by the regular selection boards. That board had the authority to decide that defective OERs constituted "harmless error" —see *Sanders, supra, Hary, supra,* and comparable decisions—and therefore that the actions of the regular selection boards should be fully upheld. But in this case it clearly did not take that course, and properly so. Instead, it voided two OERs and then concluded that "it is felt that his records should be referred to a Departmental Standby Advisory Board for consideration," and ended by recommending that after removal of the two OERs "the [corrected] records of [plaintiff] be submitted to a duly constituted Standby Promotion Selection Board for appropriate action." The natural meaning to us is that the Correction Board, in reality though not in precise words, voided the previous passovers by selection boards (which had considered the two defective OERs) and sought for plaintiff overall consideration of his promotion by new, separate tribunals.

This holding is firmly supported by the obviously serious nature of the defects found in the OERs by the Correction Board. That agency found, expressly and significantly, that "the utilization of such records [*i. e.* the two defective OERs] in consideration of the applicant [plaintiff] by selection boards for consideration for further promotion is in error and is therefore unjust."

---

10. At the most, defendant says, the matter should be remanded to the Correction Board to determine whether or not to apply the "harmless error" doctrine to the actions of the 1976 and 1977 regular selection boards (which had considered the two OERs voided by the Correction Board).

11. Our determination that plaintiff effectively sought voiding by the Correction Board of the

prior passovers removes this case from our holdings in *DeBow v. United States,* 193 Ct.Cl. 499, 503, 434 F.2d 1333, 1335 (1970), *cert. denied,* 404 U.S. 846, 92 S.Ct. 150, 30 L.Ed.2d 84 (1971) and like decisions, in which we refused to consider issues or relief not raised before or sought from ("explicitly or implicitly") the Correction Board.

Moreover, the Board said that "although removal of the aforementioned OERs *may* not result in the applicant's selection for promotion to the temporary grade of lieutenant colonel, it is felt that his records should be referred to a [STAB] for consideration" (emphasis added). This means that the removal of the voided OERs could result in promotion though that was not certain. There is, of course, no requirement that promotion be certain, if a defective OER is removed, before a passover can be voided. In *Sanders, supra*, we rejected such a "but for" or "sole and exclusive" analysis. 219 Ct.Cl. at ——, 594 F.2d at 817.

The errors recognized by the Board were not trivial, insubstantial, or technical. They involved, in one instance, an OER which confused another officer with plaintiff, and, in the other, an OER prepared by a rater who was not the appropriate person to observe and evaluate plaintiff. These errors—especially the first—were important. We are justified in inferring from their gravity, together with the Board's choice to refer the case to the STAB, that the Board did not hold or feel that the errors were harmless, but rather that it decided to give Major Evensen a fresh chance before a new promotion board.[12] The prior passovers were effectively voided and therefore could not and cannot serve as a basis for his separation from active duty.[13]

## IV ·

■ Defendant also argues that the STAB, to which plaintiff was referred, was not (and should not be treated as) the equivalent of a selection board, and therefore that the Correction Board's reference to that body could not have been the same as sending plaintiff to another selection board after vacating the actions of the ear-

lier boards. But *Doyle, supra*, 220 Ct.Cl. at ——, 599 F.2d at 998, 1001, upheld the validity and effectiveness of relook or reconstituted boards which undertake the exhaustive reevaluation that a normal, regular selection board does—and that opinion implicitly coupled to that category "standby" boards of the same full-scale character. We have no doubt that the promotion STAB here involved fits this *Doyle* class. The STAB was directed to recommend or decline to recommend officers for promotion, just as does a regular selection board. It considered a number of officers (though not as many as the regular selection boards). The army instructed that officers referred to a STAB are to be given "the same or comparable consideration as was given their contemporaries by the original selection board * * *" and the STAB was also specifically directed to use (to the extent practicable) "the same procedures and criteria as applied by regularly constituted selection boards convened pursuant to statute and regulations to consider all officers in a particular category * * *." January 20, 1976 Letter of Instruction for Standby Advisory Boards, ¶ 2, see Part II of this opinion, *supra*. There is no indication whatever that the Correction Board sent plaintiff to the STAB for consideration only of "harmless error" or "prejudice" in the proceedings of the regular 1976 and 1977 selection boards.[14] Nor did this STAB act in that way; it reconsidered *de novo* plaintiff and other officers. The JAGC opinion cited in Part II, *supra*, noted that this STAB procedure was intended to "recreate" and "parallel", substantially, the "normal selection process." Like the relook or reconstituted boards we upheld in *Doyle*, the prior defective process was entirely redone by the STAB. For the officers involved, this

---

12. It has some bearing on our interpretation of the Correction Board's actions as referring plaintiff for *de novo* consideration that two of the five voting members of the Board would have gone further and would have invalidated or upgraded the third OER (which plaintiff also attacked but which the majority of the Board did not change or void).

13. There is therefore no occasion even to consider a remand to the Correction Board to decide whether the prior passovers by the regular selection boards should be upheld as "harmless error" despite the defective OERs.

14. *Doyle* distinguished standby boards "which make a limited investigation into the question of prejudice in an original proceeding." 220 Ct.Cl. at ——, 599 F.2d at 998.

STAB was their promotion or selection board.[15] "[T]he label these boards wore is of no importance, the only question being whether [the officers] received full and fair consideration as required by law." *Doyle, supra,* 220 Ct.Cl. at ——, 599 F.2d at 998.

### V

For the reasons given in Parts II–IV, *supra,* plaintiff could not be, and was not, legally released from active service pursuant either to the actions of the regular 1976 and 1977 selection boards or to those of the STAB which considered him in November 1977. His motion for summary judgment is therefore granted and defendant's is denied. He completed twenty years of active service on March 31, 1981 (including constructive active service for the period between his improper release in January 1978 and his March 31, 1981, date of eligibility for retirement). In these circumstances he does not press for actual reinstatement. His request for reinstatement has thus become moot but he is entitled to proper back pay (active and retired) and to have his records corrected.

Accordingly, (A) judgment is entered in favor of plaintiff against defendant for the active duty pay and allowances of an officer serving in the grade of major, from the original date of his release from active duty, January 4, 1978, to March 31, 1981, the last day of the month during which plaintiff achieved twenty years of qualifying active federal service for retirement purposes; plaintiff is also entitled to proper retired pay;

(B) plaintiff's records shall be corrected to show (1) that he has been credited for constructive active duty from the date of his original release, January 4, 1978, to March 31, 1981, the last day of the month during which he achieved twenty years of qualifying active federal service for retirement purposes; (2) that his nonselections for promotion to the grade of lieutenant colonel by the regular selection boards that convened in 1976 and 1977 have been voided; (3) that his nonselections for promotion

to the grade of lieutenant colonel by the Standby Advisory Board which considered his records in November 1977 have been voided; (4) that plaintiff's release from active duty occurred on March 31, 1981; (5) that since March 31, 1981, plaintiff is entitled to retired pay at the proper level; and (6) that an appropriate notation has been placed in plaintiff's official military personnel file to explain the lack of officer efficiency reports reflecting actual service on active duty from the original date of his release from extended active duty to March 31, 1981;

(C) the case is remanded to the Secretary of the Army for computation of net back pay entitlements (both active duty pay and retired pay) consistent with our holding on liability in this opinion. Plaintiff's counsel shall report to the court under Rule 149(f) at 90–day intervals on the status of these computations by the army. The remand thus ordered shall be of 120 days duration, except that such period may be extended upon motion made under Rule 150(a) in the event an additional period of time is necessary to complete computation of plaintiff's net back pay entitlements;

(D) upon completion of the computations by the Secretary of the Army, further proceedings shall be pursuant to Rule 150.

---

15. The Correction Board recommended, and the Secretary directed, that after correction of his record plaintiff's case be submitted "to a duly constituted Standby *Promotion Selection* Board for appropriate action." (emphasis added).