**Daniel P. WISOTSKY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 04–300C.

United States Court of Federal Claims.

Jan. 12, 2006.

**300**

John A. Wickham, Evergreen, CO, for the plaintiff.

Nancy M. Kim, Trial Attorney; Bryant G. Snee, Assistant Director; David M. Cohen, Director, Commercial Litigation Branch, Civil Division; Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, DC, for the defendant. LCDR Christopher L. Ludmer, Office of The Judge Advocate General, United States Navy, Washington, DC, of counsel.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

This case originates with the plaintiff's involuntary discharge from the military. Plaintiff Daniel P. Wisotsky enlisted in the United States Marine Corps Reserve on No-

vember 27, 1979, and joined the Regular Marine Corps on December 23, 1981. Mr. Wisotsky was involuntarily separated from the service on March 31, 1998, after approximately sixteen and one-half years of active duty. He attempted to re-enlist, but his bid to do so was denied because of the nature of his discharge from the military: Under Other Than Honorable Conditions (UOTHC).

Prior to the difficulties which led to his involuntary discharge, Mr. Wisotsky attained the rank of Staff Sergeant (E–6), and earned three Navy and Marine Corps Commendation Medals and two Navy Achievement Medals.[1] The Board for Correction of Naval Records (BCNR) described Mr. Wisotsky's enlisted performance as outstanding, and noted his receipt of Honorable discharges at the conclusion of his enlistments. In February, 1994, Mr. Wisotsky applied to the Marine Corp's Regular Warrant Officer Program, and, on February 1, 1995, he was accepted for a permanent Warrant Officer appointment in the Regular Marine Corps, as a Personnel Officer. Mr. Wisotsky completed the Warrant Officers Basic Course and Personnel Officers course and then was assigned to a Marine Corps helicopter squadron in Hawaii.

For the period of June 22, 1996 to August 21, 1996, Mr. Wisotsky received an adverse fitness report for indebtedness. The plaintiff's complaint states that, in 1996, he experienced marital difficulties, separated from his wife, and began divorce proceedings. In September of 1996, Mr. Wisotsky's commander conducted an investigation of administrative deficiencies in the unit pay and personnel records which were under plaintiff's responsibility. An adverse fitness report for the period August 22, 1996 through September 13, 1996 resulted, and reflected that, as a result of the investigation, Mr. Wisotsky was relieved of duty for cause and reassigned to

---

**1.** In addition, Mr. Wisotsky's DD Form 214, Certificate of Release or Discharge from Active Duty, listed the following decorations: Joint Meritorious Unit Award, Navy Unit Commendation, five Meritorious Unit Commendations, four Good Conduct Medals, National Defense Service Medal, Southwest Asia Service Medal, Humanitarian

Service Medal, Kuwait Liberation Medal, two Sea Service Deployment Ribbons, Marine Outstanding Voluntary Service Medal, four Certificates of Commendation, Meritorious Mast, five Certificates of Appreciation, and seven Letters of Appreciation.

another position.[2]

In February, 1997 another investigation led to the nonjudicial punishment of Mr. Wisotsky under Article 15 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 815 (2000). He was charged with several offenses under the UCMJ: assaulting his wife on March 7, 1995, in violation of Article 128 of the UCMJ, 10 U.S.C. § 928 (2000) (assault); making a false statement under oath about assaulting his wife on March 11, 1996, in violation of Article 134 of the UCMJ, 10 U.S.C. § 934 (2000) (false swearing); and an unauthorized absence of four days on August 7 through August 10, 1996, in violation of Article 86 of the UCMJ, 10 U.S.C. § 886 (2000) (absence without leave—AWOL).

Mr. Wisotsky waived his right to demand trial by court-martial and accepted nonjudicial punishment under Article 15 of the UCMJ. A hearing was conducted on February 3, 1997 and Mr. Wisotsky was found guilty of all charges. Mr. Wisotsky received nonjudicial punishment following the hearing in the form of a punitive letter of reprimand and forfeiture of $500.00 pay per month for two months. Mr. Wisotsky appealed the nonjudicial punishment, without success.[3]

On February 4, 1997, Mr. Wisotsky submitted a request for resignation from the military in lieu of being processed for involuntary discharge, with the understanding that he would receive an Honorable discharge from the military if his resignation were to be accepted. The record reflects that intermediate commanders had, at one point, recommended acceptance of Mr. Wisotsky's resignation in lieu of being processed for involuntary discharge. However, on July 21, 1997, the final decisional authority, the Commandant of the Marine Corps, denied his request to resign and directed that a Board of Inquiry be convened to recommend whether or not Mr. Wisotsky should be retained in the Marine Corps.

The Board of Inquiry was convened on October 22, 1997 and consisted of three officers serving in the grade of Lieutenant Colonel (O–5). Mr. Wisotsky was represented by both appointed military defense counsel and retained civilian counsel. A Marine Corps attorney served as the legal advisor to the Board, and another Marine Corps attorney served as recorder to the Board. The reasons for separation considered by the Board of Inquiry were stated as follows:

1. Failure to demonstrate acceptable qualities of leadership required of an officer in your grade.

2. Failure to achieve or maintain acceptable standards of proficiency required of an officer of your grade.

3. Failure to properly discharge duties expected of officers of your grade and experience.

4. Unsatisfactory performance of a warrant officer not amounting to misconduct or moral or professional dereliction.

5. Commission of a military or civilian offense which, if prosecuted under the UCMJ, could be punished by confinement of six months or more, or if prosecuted under the UCMJ would require specific intent for conviction.

6. Intentional misrepresentation or omission of material fact in official documents or official oral statements.

The Board of Inquiry found that the first, third, fourth, fifth and sixth reasons for separation listed immediately above were supported by a preponderance of evidence. The second reason listed above, achieving and maintaining acceptable standards of proficiency required of an officer of Mr. Wisotsky's grade, was not found by the Board to be supported by a preponderance of the evidence. The Board of Inquiry recommended that Mr. Wisotsky be discharged Under Other Than Honorable Conditions (UOTHC). Intermediate commanders, including the Office of the Commandant of the Marine Corps, endorsed the recommendation for a discharge Under Other Than Honorable Conditions, and the Assistant Secretary of the

---

**2.** Mr. Wisotsky disputed the findings of the investigation and his relief from duty to his commander, without success.

**3.** In his February 4, 1997 appeal, Mr. Wisotsky noted, among other things, that he had filed for bankruptcy the previous month.

Navy for Manpower and Reserve Affairs approved the discharge recommendation, with an effective date of March 31, 1998. At this point, Mr. Wisotsky had approximately sixteen and one-half years of active duty. Mr. Wisotsky's DD Form 214, Certificate of Release or Discharge from Active Duty, indicated that the Narrative Reason for Separation was "Involuntary Discharge (Unacceptable Conduct) with Board."

The administrative record reflects Mr. Wisotsky's counsel complained prior to the Board of Inquiry hearing that, with three Lieutenant Colonel Board members, no member of the Board of Inquiry was in the same competitive category as then Warrant Officer Wisotsky. On October 1, 1997, the recorder to the Board of Inquiry responded to counsel that the board composition cited by Mr. Wisotsky's counsel applied to the Navy and not to the Marine Corps. The Board of Inquiry convened on October 22, 1997. In his opening remarks, Mr. Wisotsky's counsel again objected to the composition of the Board of Inquiry:

First and foremost, I believe that the SECNAV [Secretary of the Navy] instruction that was read initially, the 1926(a), indicates within it that an officer pending a board of inquiry such as this is entitled to have an officer within his speciality group, his field. And that's why I think, at least for indicating for Headquarters Marine Corps on the record, that if we're going to evaluate a warrant officer, that perhaps one of the members on the board should have been a chief warrant officer or someone within his specific MOS [military occupation specialty] field of admin[istration]. Now I'm not taking anything from the board members that we have here now, but I believe that if you step back and examine personally yourselves, if someone was questioning your proficiency and ability, that it might be pertinent to have one of the board members be someone who, in this case, is an admin specialist, that could provide special insight to the board to say, you know, I'm familiar with these types of problems and I'm familiar with how an admin officer can let the shop go and these problems happen. So I just wanted to

indicate that for the board just to preserve it. (abbreviations in original).

The Board of Inquiry did not further address the issue of the composition of the Board, but conducted its proceedings and made its recommendations with a complement of three Lieutenant Colonel Board members. As indicated above, the Board of Inquiry's recommendation that Mr. Wisotsky be discharged Under Other Than Honorable Conditions was endorsed by the chain of command, and approved by the Assistant Secretary of the Navy for Manpower and Reserve Affairs. On March 31, 1998, Mr. Wisotsky was discharged from the military.

Mr. Wisotsky then requested re-enlistment in the Marine Corps. His request was denied on June 2, 1998. On May 13, 1999, Mr. Wisotsky filed an application for relief with the Board for Correction of Naval Records. The issues raised by Mr. Wisotsky before the BCNR were as follows: (1) whether a temporary (as opposed to permanent) Warrant Officer can be subjected to a Board of Inquiry; (2) whether the Board of Inquiry should have included an officer in the same class or category as Mr. Wisotsky; (3) whether he should have been permitted to reenlist in the Marine Corps; and (4) whether he should have received a discharge Under Other Than Honorable Conditions.

The BCNR issued its decision on February 28, 2001, denying relief. However, the BCNR agreed with Mr. Wisotsky that the Board of Inquiry was improperly constituted. The BCNR noted that SECNAVINST [Secretary of the Navy Instruction] 1920.6A, at paragraph 2d(3), required that "one member [of the Board of Inquiry] . . . be in the same competitive category as the respondent." Having agreed that no Board of Inquiry member was in the same competitive category as Mr. Wisotsky, the BCNR next considered whether the improperly constituted Board of Inquiry error "was jurisdictional in nature, thereby rendering the discharge proceedings null and void." The BCNR's decision recognized the differing views on the issue:

There is case law to the effect that an improperly constituted military board is a fatal defect which invalidates the action of

that board. Other cases, however, reject this reasoning and state that a reviewing authority such as the correction board should set aside the initial action only if the potential for prejudice cannot reasonably be denied.[4]

The BCNR then concluded that an improperly constituted Board of Inquiry error is not jurisdictional in nature, relying on *Wolfe v. Marsh*, 835 F.2d 354, 356–59 (D.C.Cir. 1987) (it was error for a soldier's intermediate commanders to have failed to make recommendations on his request for discharge, but the Army Board for Correction of Military Records found the error not to be prejudicial and, on appeal, the United States District Court and the United States Court of Appeals for the District of Columbia also concluded that the particular error did not warrant a *per se* rule, which would have invalidated the Correction Board action), *recons. denied*, 846 F.2d 782 (D.C.Cir.), *cert. denied*, 488 U.S. 942, 109 S.Ct. 366, 102 L.Ed.2d 355 (1988). The BCNR then considered whether the improperly constituted Board error had been waived by Mr. Wisotsky, and decided that it had not been waived, noting that the error had been raised both prior to the convening of the Board of Inquiry and during the Board's proceedings.

The BCNR also considered whether the error was harmless, and concluded that it was because there was no evidence that the members of the Board of Inquiry were prejudiced against Mr. Wisotsky, and also for this reason:

Although you [Mr. Wisotsky] were processed for separation, in part due to unsatisfactory performance of duty, and a warrant officer in your competitive category might have had some insight into the merits of these allegations not shared by the unrestricted line officers on the BOI, you were also processed based on allegation of

misconduct that had no relation to your military duties, and this misconduct eventually was designated as the reason for your discharge and not the deficiencies in your performance.

The BCNR added that Mr. Wisotsky's "service as a warrant officer was marred by a disciplinary action for relatively serious offenses and by substandard performance resulting in relief for cause, which warranted the characterization of UOTHC [Under Other than Honorable Conditions]." Subsequently, Mr. Wisotsky filed his complaint in this court, requesting, among other things, that his involuntary discharge from the military be set aside and that he be restored to active duty, or permitted to retire.

**DISCUSSION**

*Standard of Review*

As a fundamental starting point, the United States Court of Appeals for the Federal Circuit has advised that:

responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence. Thus, although judicial review of military service determinations with monetary consequences is available, the review jurisdiction has been summarized:

[R]eview of the administrative decision is limited to determining whether the * * * action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced. [Citations omitted.]

---

4. The BCNR decision cited four United States Court of Claims cases for the proposition that a board composition error is a fatal defect: *Evensen v. United States*, 228 Ct.Cl. 207, 654 F.2d 68 (1981); *Doyle v. United States*, 220 Ct.Cl. 285, 599 F.2d 984, *opinion amended*, 220 Ct.Cl. 326, 609 F.2d 990 (1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980); *Ricker v. United States*, 184 Ct.Cl. 402, 396 F.2d 454 (1968); and *Henderson v. United States*, 175 Ct.

Cl. 690 (1966), *cert. denied*, 386 U.S. 1016, 87 S.Ct. 1373, 18 L.Ed.2d 455 (1967) and one United States Court of Appeals for the Federal Circuit case, *Sargisson v. United States*, 913 F.2d 918 (Fed.Cir.), *reh'g denied* (1990), for the proposition that a board composition error is not a fatal defect. *Evensen*, *Doyle* and *Sargisson* are considered below. The Board also cited two District of Columbia Circuit Court of Appeals cases and one Third Circuit Court of Appeals case.

*Clayton v. United States,* 225 Ct.Cl. 593, 595 (1980).

*Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983) (footnotes omitted; alterations in original); [5] *see also Roth v. United States,* 378 F.3d 1371, 1381 (Fed.Cir.2004) ("The Court of Federal Claims reviews a Board decision to determine if it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence."), *reh'g denied* (2004); *Wagner v. United States,* 365 F.3d 1358, 1361 (Fed.Cir.2004); *Haselrig v. United States,* 333 F.3d 1354, 1355 (Fed. Cir.), *reh'g denied* (2003). Similarly, in *Porter v. United States,* the Federal Circuit indicated that: "When called upon to review a decision of a corrections board, or of a Secretary taken upon recommendation from a corrections board, the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *See Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824 (1979)." *Porter v. United States,* 163 F.3d 1304, 1312 (Fed.Cir.1998), *cert. denied,* 528 U.S. 809, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999).

■ Judicial review of a corrections board should not be an opportunity for courts to substitute their judgment for that of the military board when reasonable minds could reach differing conclusions. *See Sanders v. United States,* 219 Ct.Cl. 285, 303–05, 594 F.2d 804, 814–15 (1979). The Supreme Court has noted that "judges are not given the task of running the Army.... The military constitutes a specialized community governed by a separate discipline from that of the civilian." *Orloff v. Willoughby,* 345 U.S. at 93, 94, 73 S.Ct. 534; *see also Porter v. United States,* 163 F.3d at 1316.

■ In military pay cases, the burden of proof is on the plaintiff. As stated in *Fluellen v. United States:*

The plaintiff bears the burden of showing that the AFBCMR's [Air Force Board for Correction of Military Records'] action was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir. 1986)[, *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986)]; *Hoskins v. United States,* 40 Fed.Cl. 259, 271–72 (1998). To prevail under the arbitrary and capricious standard, plaintiff must demonstrate that evidence was ignored or unreasonably construed, or that designated duties were not performed by the AFBCMR. *Kirwin [v. United States],* 23 Cl.Ct. [497], 502[, 1991 WL 110912 (1991)]. Moreover, "plaintiff must overcome the presumption that 'administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.'" *Chayra v. United States,* 23 Cl.Ct. 172, 178 (1991), quoting *Sanders [v. United States,* 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979)]. "While the court might disagree with the board's decision, it cannot substitute its own judgment for the board's if reasonable minds could reach differing resolutions of a disputed fact." *Chayra,* 23 Cl.Ct. at 178–179.

*Fluellen v. United States,* 44 Fed.Cl. 97, 101 (1999), *aff'd,* 225 F.3d 1298 (Fed.Cir.), *reh'g denied* (2000). The Federal Circuit also has written that "a soldier who has sought relief from a correction board is bound by its decision unless he can demonstrate by 'cogent and clearly convincing evidence that the correction board acted arbitrarily, capriciously, contrary to law, or that its determination was unsupported by substantial evidence.'" *Dodson v. United States,* 988 F.2d 1199, 1204–05 (Fed.Cir.), *reh'g denied* (1993) (citations omitted).

■ Although courts should be responsible and seek not to interfere in military matters beyond their competence, it, nonetheless, is a court's duty to identify and

---

5. Deference to the military on the issue of fitness to serve in the military is derived from *Orloff v. Willoughby,* in which the United States Supreme Court wrote: "Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. While the courts have found occasion to determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders, we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service." *Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842, *reh'g denied,* 345 U.S. 931, 73 S.Ct. 779, 97 L.Ed. 1360 (1953).

review errors in process and procedure, especially when those procedures have been established by the military itself. Agencies are bound by the applicable statutes and regulations. *Id.* at 1204; *see also Wagner v. United States,* 365 F.3d at 1361 ("We begin with the initial premise that an agency is bound by its own regulations." (citing *Service v. Dulles,* 354 U.S. 363, 388, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957))); *Voge v. United States,* 844 F.2d 776, 779 (Fed.Cir.1988) ("It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all ....."), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988). This principle also applies to the military branches. Like any other body of the government, the military is bound by statute and its own regulations. "[E]ven when granted unfettered discretion by Congress the military must abide by its own procedural regulations should it choose to promulgate them." *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir. 2002).

In *Godwin v. United States,* the Court of Appeals for the Federal Circuit likewise stated:

> [T]he composition, training, equipping, and control of a military force is frequently "beyond the institutional competence of courts to review." *Lindsay v. United States,* 295 F.3d at 1257.... However, a claim of a procedural violation may be justiciable because " 'the test or standards against which this court measures the military's action are inherent: they are the applicable statutes and regulations.' " *Id.* at 1257–58 (quoting *Adkins v. United States,* 68 F.3d 1317, 1323 (Fed.Cir.1995)).

*Godwin v. United States,* 338 F.3d 1374, 1378 (Fed.Cir.2003). In addition, violations of internal operating procedures also may lead to court ordered relief. *See Wagner v. United States,* 365 F.3d at 1363.

*The Board of Inquiry*

A Board of Inquiry is convened to provide an officer "a full and impartial hearing at which he or she may respond to and rebut the allegations which form the basis for separation for cause ... and present matters favorable to his or her case on the issues of separation and[/]or characterization of service." SECNAVINST 1920.6A CH–2, Administrative Separation of Officers, ¶ 2a (Mar. 17, 1993). The Navy regulations governing the composition of inquiry boards state that boards "shall consist of not less than three officers in the same Armed Force as the respondent," and "[o]ne member shall be in the same competitive category as the respondent." SECNAVINST 1920.6A CH–2, Administrative Separation of Officers, ¶ 2d(3) (Mar. 17, 1993). The Navy Instruction continues: "CHNAVPERS [Chief of Naval Personnel] or DC/S (M & RA) [Deputy Chief of Staff, Manpower and Reserve Affairs] may waive each of these requirements on a case-by-case basis when compliance would result in undue delay. The purpose of these representation requirements is not to serve the interest of any specific group, but to increase the knowledge and experience of the board as a whole."[6] The record before this court does not reflect that the requirement for a Board of Inquiry member in the same competitive category was waived.

As noted earlier, the BCNR concluded that, in accordance with paragraph 2d(3) of SECNAVINST 1920.6A CH–2 (quoted above), one member of the Board of Inquiry

---

6. SECNAVINST 1920.6B, issued subsequently and dated December 13, 1999, at paragraph 2d(3), similarly states that a Board of Inquiry shall consist of not less than three officers from the same Armed Force as respondent, and shall have a least one member from the same competitive category as the respondent. The December 13, 1999 Navy Instruction, at paragraph 2d(3), continues:

> This [having at least one member from the same competitive category as respondent] is especially important when considering an officer for substandard performance. However,

in cases involving small competitive categories, isolated geographic locations, or for reasons of operational necessity, competitive category membership may be waived by the convening authority if no suitable officer is reasonable available.

Mr. Wisotsky's Board of Inquiry convened on October 22, 1997, therefore, SECNAVINST 1920.6A CH–2, dated March 17, 1993, was applicable. The December 13, 1999 version, however, is similar and not inconsistent with the March 17, 1993 version.

was required to be in the same competitive category as Mr. Wisotsky. In fact, no member of the Board of Inquiry which convened on October 22, 1997 was in the same competitive category as Mr. Wisotsky. The court agrees with the BCNR that the Board of Inquiry was improperly constituted. Defendant does not dispute this conclusion, but argues, instead, that the BCNR correctly determined that the error was harmless.

*Harmless Error versus Fundamental Error*

■ The issue is the nature of the acknowledged error—the improper constitution of the Board of Inquiry. As to this procedural error, the United States Court of Appeals for the Federal Circuit addressed when harmless error review is applicable and when it is not in *Wagner v. United States,* 365 F.3d at 1362–65. The facts of the case are addressed extensively in the trial opinion, *Wagner v. United States,* 56 Fed.Cl. 634 (2003). Mr. Wagner was an Army reservist. He was convicted in a court-martial proceeding, but a punitive discharge was not part of his punishment. *Id.* at 635. Nevertheless, as a result of his court-martial, the Department of the Army Active Duty Board (DAADB) initiated discharge proceedings, and ultimately recommended that Mr. Wagner be involuntarily discharged Under Other Than Honorable Conditions. *Id.* An Army Regulation, however, required pre-approval of the initiation of the discharge process by the Secretary of the Army, for officers such as Mr. Wagner who would have more than eighteen years of service at the time of their separation from the military. *Id.* Even though the pre-approval to initiate involuntary discharge proceedings had not been obtained, the Principal Deputy Assistant Secretary for Manpower and Reserve Affairs ordered Mr. Wagner's release from active duty Under Other Than Honorable Conditions, based on the recommendation of the DAADB. *Id.* In an attempt to cure the error of the Secretary of the Army not pre-approving the initiation of the discharge process for Mr. Wagner, the Secretary of the Army's delegee subsequently endorsed the earlier decision to release Mr. Wagner from active duty. *Id.* at 635–36.

Mr. Wagner sought relief from the Army Board for Correction of Military Records (ABCMR). The ABCMR found that the violation of the above-noted Army Regulation was harmless error, in that the Board believed the Secretary of the Army would have authorized the initiation of the DAADB discharge procedures if the Secretary had been consulted prior to the initiation of the discharge procedure, as required by the Army Regulation. *Id.* at 636.

Mr. Wagner then sought relief from the Court of Federal Claims. The trial court agreed with the ABCMR that the Army Regulation had been violated, and also agreed with the ABCMR that the error was harmless. *Id.* at 638. Mr. Wagner had argued that what the Secretary of the Army would have done if the Army Regulation had been complied with was "pure speculation." *Id.* The trial court, however, viewed the after-the-fact endorsement of the discharge action by the Secretary of the Army's delegee as strong evidence that the Secretary would have pre-approved the initiation of the Mr. Wagner's discharge proceedings had the Secretary been asked to do so at the proper stage. *Id.* at 638–39. Furthermore, the trial court agreed with the government's argument that the after-the-fact endorsement of Mr. Wagner's discharge effectively cured the error and provided Mr. Wagner with the procedural safeguards provided by the Army Regulation (that is, oversight of the initiation of involuntary discharge proceedings by the Secretary of the Army for officers with over eighteen years of service). *Id.* at 639. Consequently, Mr. Wagner was denied relief by the trial court. *Id.*

The Federal Circuit analyzed the two types of cases, those in which harmless error is appropriate and those in which harmless error review is inapplicable, and reversed. Regarding the particular error in *Wagner,* the court found the harmless error doctrine inappropriate and found that, therefore, Mr. Wagner had not been legally released from the Army. *See Wagner v. United States,* 365 F.3d at 1364–65.

In *Wagner,* the Federal Circuit described the first line of cases as involving substantive errors in military personnel records, such as inaccurate Officer Effectiveness Reports, which lead to promotion passovers and invol-

untary separations from the military. A civilian review board, such as the BCNR in the present case, should and could review the impact of inaccuracies in a military record on a service member's failure to be promoted for harmless error, that is, whether the error was harmless because "substantial evidence show[s] that it was unlikely that the officer would have been promoted in any event." *Wagner v. United States*, 365 F.3d at 1362 (quoting *Sanders v. United States*, 219 Ct.Cl. at 310, 594 F.2d at 818).

The Federal Circuit described the second line of cases, in which a harmless error review is inapplicable, as involving procedural errors in the composition of military selection boards, such as failing to have a certain number of Reserve officers as members of a selection board considering Reserve officers for promotion, when required to do so by statute or regulation or internal operating procedures. *See Wagner v. United States*, 365 F.3d at 1362 (citing *Doyle v. United States*, 220 Ct.Cl. at 290, 599 F.2d at 988). Citing cases such as *Doyle*, the Federal Circuit in *Wagner* provided the following guidance:

> The court in *Doyle* articulated two justifications for refusing to apply the harmless error rule: (1) avoiding the erosion of essential components of a fair trial; and (2) the inability of a reviewing body to assess the magnitude of the error. *Doyle*, 599 F.2d at 995. In *Evensen [v. United States, 228 Ct.Cl. 207, 654 F.2d 68 (1981)]*, the Court of Claims reaffirmed the importance of the second justification, explaining that in cases where the effect of the error is incapable of evaluation, harmless error review is inappropriate. 654 F.2d at 72. The court in *Evensen* also explained that fundamental errors are not limited to statutory procedural error, but may also result from violations of regulations and even internal operating procedures. *See id.* at 71.

*Wagner v. United States*, 365 F.3d at 1363. The Federal Circuit further noted that the United States Supreme Court has made similar distinctions on the applicability of harm-

less error analysis. The Supreme Court in *Arizona v. Fulminante* stated:

> The common thread connecting these [harmless error] cases is that each involved "trial error"—error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.

*Arizona v. Fulminante*, 499 U.S. 279, 307–08, 111 S.Ct. 1246, 113 L.Ed.2d 302, *reh'g denied* (1991); *see also Wagner v. United States*, 365 F.3d at 1363.[7] The Federal Circuit in *Wagner* viewed the inaccurate Officer Effectiveness Reports in *Sanders* as analogous to the "trial errors" in *Arizona v. Fulminante*, which can be assessed by an independent reviewing body such as a corrections board. *Wagner v. United States*, 365 F.3d at 1363 (citing *Sanders v. United States*, 219 Ct.Cl. at 310, 594 F.2d at 818).

Also as stated by the Court in *Arizona v. Fulminante*:

> In contrast, the [United States Supreme] Court described the cases in which it rejected harmless error review as those involving "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standard." Again, like the defective board compositions in *Doyle*, the effect of these errors is not quantifiable and is therefore incapable of review.

*Arizona v. Fulminante*, 499 U.S. at 309, 111 S.Ct. 1246; *see also Wagner v. United States*, 365 F.3d at 1363–64; *Barnes v. United States*, 66 Fed.Cl. 497, 501–03 (2005); *Carmichael v. United States*, 66 Fed.Cl. 115, 121–22 (2005). The Federal Circuit in *Wagner* concluded that the nature of the procedural error in that case precluded harmless error review, "as the magnitude of the effect of the error on the proceeding defies assessment by a reviewing body.... Where the effect of an error on the outcome of a proceeding is unquantifiable, ... we will not speculate as to what the outcome might have been had

---

7. The burden to produce such substantial evidence that the error was harmless is on the government. *See Porter v. United States*, 163 F.3d at 1317.

the error not occurred." *Wagner v. United States*, 365 F.3d at 1364, 1365.

As noted earlier, the Board of Inquiry that led to Mr. Wisotsky's discharge Under Other Than Honorable Conditions was composed of three Lieutenant Colonels. No member of the board was a warrant officer, the same competitive category as Mr. Wisotsky, as Navy regulations required. The issue, therefore, is whether harmless error review is applicable or inapplicable for this sort of error.

The BCNR, for its part, found the error to be harmless:

> After careful consideration of the facts and circumstances, the Board concluded that the foregoing error was harmless. In this regard, there is no evidence that any of the officers who sat on the BOI were prejudiced against you [Mr. Wisotsky] in any way.[8] Although you were processed for separation, in part, due to unsatisfactory performance of duty, and a warrant officer in your competitive category might have had some insight into the merits of these allegations not shared by the unrestricted line officers on the BOI, you were also processed based on allegations of misconduct that had no relation to your military duties, and this misconduct eventually was designated as the reason for your discharge and not the deficiencies in your performance.

With respect to Mr. Wisotsky's duty performance, the BCNR acknowledged that "extensive documentation" was considered by the members of the Board of Inquiry pertaining to both misconduct and to Mr. Wisotsky's "substandard performance of duty." The BCNR also acknowledged that the live testimony at the Board of Inquiry focused primarily on the substandard duty performance. The BCNR noted that, in addition to finding misconduct, the Board of Inquiry found, by a preponderance of the evidence, that Mr. Wisotsky had failed to demonstrate acceptable qualities of leadership required by an officer of his grade, had failed to properly discharge the duties expected of officers of his grade and experience, and had engaged

in unsatisfactory performance as a warrant officer. The Board of Inquiry concluded, therefore, that Mr. Wisotsky had engaged in both misconduct and substandard duty performance, and recommended discharge Under Other Than Honorable Conditions (UOTHC). As to this character of discharge, the BCNR noted that Mr. Wisotsky had "outstanding performance" while in an enlisted status, as reflected by the Honorable discharges he received during that period of time, but that Mr. Wisotsky's "service as a warrant officer was marred by a disciplinary action for relatively serious offenses and by substandard performance resulting in relief for cause, which warranted the characterization of UOTHC."

After the Board of Inquiry, the Wisotsky discharge action was forwarded through the chain of command to the Office of the Secretary of the Navy. Each command level endorsed the results and recommendations of the Board of Inquiry, which, as noted above, based its recommendations, in part, on several findings of substandard duty performance. The Deputy Chief of Staff for Manpower and Reserve Affairs in the Office of the Commandant of the Marine Corps, in recommending discharge Under Other Than Honorable Conditions, stated: "The Board of Inquiry found that a preponderance of the evidence proved the allegations of misconduct and substandard performance against Warrant Officer Wisotsky .... I have specifically considered Warrant Officer Wisotsky's record of service and his performance in making this recommendation." Mr. Wisotsky's discharge was approved by the Assistant Secretary of the Navy for Manpower and Reserve Affairs. The record reflects, therefore, that substandard duty performance was part and parcel of Mr. Wisotsky's discharge process at each level, from the Board of Inquiry to the Office of the Secretary of the Navy.

In spite of pervasive inclusion of duty performance considerations as a foundation for Mr. Wisotsky's discharge, as noted above, the BCNR's harmless error analysis concluded that the substandard duty performance really did not matter, because "misconduct

---

8. The record does not reflect that the members of the Board of Inquiry were prejudiced against Mr.

Wisotsky, nor does plaintiff make such an argument.

eventually was designated as the reason for [Mr. Wisotsky's] discharge and not the deficiencies in [his] performance." The BCNR does not further elaborate its point, but the record does contain Mr. Wisotsky's DD Form 214, Certificate of Release or Discharge from Active Duty, which lists in block 28, as the Narrative Reason for Separation— "Involuntary Discharge (Unacceptable Conduct) with Board." Nevertheless, the BCNR reasoning elevates form over substance. If the DD Form 214 had listed all of the reasons for Mr. Wisotsky's separation from the military, the form would have listed both the unacceptable conduct and the substandard duty performance, as indicated by the findings of the Board of Inquiry and the subsequent recommendations of the chain of command, which were adopted and approved by the discharge authority, as discussed above. The BCNR's reliance on a single, summary entry in a block on a government form, even an important form like the DD Form 214, reflecting only the more serious of the two categories of reasons for discharge, in the face of the BCNR's knowledge of what actually happened, is not reasonable or appropriate. *See* MCO P1900.16, Marine Corps Separation and Retirement Manual (May 30, 2001), ¶ 6303.2(f) ("If the separation authority approves two or more bases for separation, the authority shall further indicate the primary single basis to appear on the member's DD Form 214."). Although the discharge authority based Mr. Wisotsky's involuntary separation on both misconduct and substandard duty performance, the single code entered in Block 26 of the DD Form 214, "Separation Code" was GNC1, which is defined as the "Involuntary Discharge (Unacceptable Conduct) with Board" entry which was placed in Block 28 of the DD Form 214, "Narrative Reason for Separation." However, the identification and use of a single code reflecting the more serious basis for discharge does not change the underlying dual basis for Mr. Wisotsky's discharge.

Since duty performance was part and parcel of Mr. Wisotsky's discharge, a service member in the same competitive category as Mr. Wisotsky, potentially could have assisted the Board of Inquiry in their understanding of the circumstances surrounding Mr. Wisotsky's duty performance, which might or might not have affected the outcome of the discharge proceedings, especially given the live testimony presented to the Board of Inquiry. To assume that the result would be the same with or without a Board of Inquiry member of the same competitive category as plaintiff requires speculation on what might have occurred had the convener of the Board of Inquiry complied with the Navy Regulation. The failure to include a Board member in Mr. Wisotsky's competitive category is a board composition error, the effect of which is not capable of evaluation. Due to the inability of the BCNR, this court or any other reviewing body to assess the magnitude of the error in this case, harmless error review is inappropriate and inapplicable. *See Wagner v. United States*, 365 F.3d at 1362 (citing *Doyle v. United States*, 220 Ct.Cl. at 302, 599 F.2d at 995).

Defendant cites *Sargisson v. United States*, 913 F.2d 918, as a case analogous to the present case. Mr. Sargisson, an Air Force Reserve officer, was involuntarily released from active duty in a reduction in force. *Id.* at 920. After his release from the Air Force, he successfully challenged an unfavorable OER before the Air Force Board for Correction of Military Records (AFBCMR). *Id.* The reduction in force Board had separated Mr. Sargisson based in part on the inaccurate OER. Nevertheless, the AFBCMR would not reinstate Mr. Sargisson to the military, after review based on the harmless error theory, because there was little chance that the removal of the single OER from consideration by the reduction in force Board would have caused him to be retained in the military. *Id.* (The United States Court of Appeals for the Federal Circuit in *Sargisson* noted that the AFBCMR had concluded: "the likelihood is remote that the removal of a single OER would change his rating so much that he would have been retained on active duty." (quoting the Air Force Board for Correction of Military Records)).

The reason the defendant cites to the *Sargisson* case, however, is that Mr. Sargisson (albeit unsuccessfully) also attempted to raise a board composition error. He argued that

the reduction in force board was improperly constituted, that, by statute, an appropriate number of Reserve officers were required to be Board members, and that one Reserve officer out of fifty-two Board members was insufficient. *Id.* The Federal Circuit, however, declined to void the result of the reduction in force Board, reasoning that the statutory requirement for Reserve officers to be placed on military boards was to eliminate any potential discrimination against Reserve officers by boards composed of Regular officers. *Id.* at 923. In the case of *Sargisson,* since only Reserve officers were being considered by the reduction in force Board, and Sargisson was not competing with Regular officers for retention on active duty, the Federal Circuit concluded that there was no opportunity for such discrimination. *Id.*

The result in *Sargisson* is consistent with the reasons described above in *Wagner* for not applying the harmless error rule: to avoid eliminating essential components of a fair trial, and the inability of the reviewing body to assess the impact and extent of an error. *See Wagner v. United States,* 365 F.3d at 1363 (citing *Doyle v. United States,* 220 Ct.Cl. at 302–04, 599 F.2d at 995–96). In *Sargisson,* the Federal Circuit determined that the reduction in force board was fair, even with only one Reserve officer as a Board member, since it was exclusively a Reserve officer review board, and that the magnitude of any error stemming from not enough Reserve officers could be assessed, and was assessed, as having a nonexistent impact on the Board results. *Sargisson v. United States,* 913 F.2d at 923. Therefore, any error stemming from too few Reserve officers on the reduction in force Board in *Sargisson* was found to be harmless.

Attempting to analogize to *Sargisson,* defendant suggests that Mr. Wisotsky did not suffer any prejudice as a result of the Board of Inquiry being improperly constituted, "because he would have been discharged under Other Than Honorable conditions regardless of whether the Board of Inquiry was properly constituted." Defendant notes that Navy regulations state: "When the [officer's] separation is solely for reasons constituting substandard performance of duty

... the characterization must be Honorable." SECNAVINST 1920.6A, encl. 5, ¶ 1a, Guidelines on Characterization of Service (Nov. 21, 1983). On the other hand, defendant points out, when an officer is separated for misconduct, "the separation normally [will] be under Other Than Honorable conditions." SECNAVINST 1920.6A, encl. 5, ¶ 1b, Guidelines on Characterization of Service (Nov. 21, 1983). Since misconduct will normally yield a discharge Under Other Than Honorable Conditions, and misconduct was part of the basis for Mr. Wisotsky's discharge, defendant argues that the improper composition of the Board of Inquiry was without prejudice, since the misconduct, standing alone, was a sufficient basis to discharge Mr. Wisotsky Under Other Than Honorable Conditions. Defendant is discussing Navy Regulations which deal with the "characterization" of a discharge (Honorable, General, Under Other Than Honorable Conditions). Before a discharge is characterized, however, there must be a decision to discharge. It is speculation on the part of defendant to presume what a properly constituted Board of Inquiry would have done when reviewing Mr. Wisotsky's record. In fact, the record suggests that before the Board of Inquiry was convened some of the commanders in the plaintiff's chain of command had recommended accepting a resignation in lieu of processing an involuntary discharge. Navy Regulations state that whenever a Marine is involved in misconduct, "commanders shall process the Marine for separation unless rehabilitation and retention are warranted ...." MCO P1900.16, Marine Corps Separation and Retirement Manual (May 30, 2001), ¶ 6210.1. An evaluation of duty performance is involved in a consideration of rehabilitation and retention, and a Board member in Mr. Wisotsky's competitive category might have led to a different result based on competence in and knowledge of the performance duties in that competitive category.

The Navy guidance on characterization of discharges also leaves open the possibility that even a discharge based in part on misconduct will not be Under Other Than Honorable Conditions. Navy Regulations state that, for misconduct, "characterization as

General may be warranted under the guidelines .... Characterization as Honorable is not authorized unless the officer's record is otherwise so meritorious that under the particular circumstances any other characterization would be clearly inappropriate." SECNAVINST 1920.6A, encl. 5, ¶ 1b, Guidelines on Characterization of Service (Nov. 21, 1983). A General discharge (under honorable conditions) is appropriate "[i]f an officer's service has been honest and faithful ... [and] is warranted when significant negative aspects of the officer's conduct or performance of duty outweigh positive aspects of the officer's military record." SECNAVINST 1920.6A, encl. 5, ¶ 2b, Guidelines on Characterization of Service (Nov. 21, 1983). A discharge Under Other Than Honorable Conditions is appropriate when the officer's conduct or "performance of duty, particularly the acts or omissions that give rise to reasons for separation, constitute a significant departure from that required of an officer of the naval service." SECNAVINST 1920.6A, encl. 5, ¶ 2c, Guidelines on Characterization of Service (Nov. 21, 1983). An evaluation of duty performance is involved in these differing characterizations, and a Board member in Mr. Wisotsky's competitive category might have led to a different result based on competence in and knowledge of the performance duties in that competitive category. The nature of this particular board composition error, given the facts of the case before the court, is that we must speculate on the possible magnitude of the error.

In *Sargisson*, the Federal Circuit concluded that there was no chance that the alleged board composition error (only one Reserve officer and fifty-one Regular officers were on the Board) would have had an impact, because only Reserve officers were meeting the reduction in force Board, not both Regular and Reserve officers. *See Sargisson v. United States*, 913 F.2d at 920, 923. In the present case, by way of contrast, a properly constituted board might have yielded a different result. What might have happened is subject to speculation and defendant, plaintiff nor this court can know the result with any reasonable certainly. What is known is that the Office of the Commandant of the Marine Corps and the Office of the Secretary of the Navy (the final discharge authority) relied on the Board of Inquiry's finding of Mr. Wisotsky's substandard duty performance in the decision to discharge with the characterization as Under Other Than Honorable Conditions. Had the Board of Inquiry been properly constituted, the discharge decision and characterization decision would have been within the discretion of the military—military decisions which this court should not second guess. But the Board of Inquiry was improperly constituted, and Mr. Wisotsky, therefore, was not legally separated from the military. The BCNR's decision to the contrary, under the facts and circumstances of this case, is not reasonable, but arbitrary and capricious.

## CONCLUSION

For the above-stated reasons, the plaintiff's cross-motion for judgment upon the administrative record is **GRANTED**, and the defendant's motion for judgment upon the administration record is **DENIED**. Although not to condone the plaintiff's behavior, the court finds for the plaintiff due to the defendant's failure to adhere to its own rules. The parties shall consult, determine appropriate relief due the plaintiff, and file a joint stipulation reflecting the proposed relief on or before **Monday, February 13, 2006.**

**IT IS SO ORDERED.**