Evelyn L. LEWIS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 03-2796C.

United States Court of Federal Claims.

July 29, 2005.

Eugene R. Fidell, Feldesman Tucker Leifer Fidell, L.L.P., Washington, D.C., counsel for plaintiff. Matthew S. Freedus, of counsel.

Douglas K. Mickle, United States Department of Justice, Civil Division, Commercial Litigation Branch, counsel for defendant. Lt. Marc Rosen, United States Navy, Office of Judge Advocate General, of counsel.

## MEMORANDUM OPINION AND ORDER

BRADEN, Judge.

### FACTUAL BACKGROUND [1]

On June 13, 1983, Plaintiff began active duty as a physician with the United States Navy ("Navy"). *See* AR at 144. Since 1991, Plaintiff held a restricted medical license from the State Oklahoma. *See* Pl.App. at 4–5.

On October 17, 1998, Congress enacted the Strom Thurmond National Defense Authorization Act For Fiscal Year 1999, revising the licensing standards for military physicians and requiring every military physician to have an unrestricted medical license. *See* Strom Thurmond National Defense Authori-

---

1. The facts discussed herein are derived from: Plaintiff's September 26, 2000 Complaint ("Compl."); Plaintiff's January 6, 2004 Second Amended Complaint ("Second Amended Compl."); Defendant's Appendix to the January 24, 2005 Statement of Facts ("Gov't App."); the Administrative Record, filed on January 27, 2005 ("AR"); the Appendix to Plaintiff's February 23, 2005 Cross–Motion for Summary Judgment ("Pl. App."); and Plaintiff's February 28, 2005 Third Amended Complaint ("Third Amended Compl.").

zation Act For Fiscal Year 1999, Pub.L. No. 105–261, 112 Stat. 2073 (codified as amended at 10 U.S.C. § 1094(a)(1) (1998)). On January 29, 1999, the Assistant Secretary of Defense for Health Affairs issued a letter outlining this new policy regarding physician licensing that stated: "Unless [the requirement is] waived, all physicians must have at least one current unrestricted license." Gov't App. at 25.

On April 21, 1999, the President nominated Plaintiff for promotion to the rank of Captain and on June 30, 1999, the Senate confirmed her nomination. *See* Gov't App. at 1–3; *see also* 145 CONG. REC. S7966–01 (daily ed. June 30, 1999). Plaintiff's promotion was scheduled to become effective on August 1, 2000. *See* AR at 29. In December 1999, however, the Bureau of Medicine and Surgery directed Plaintiff to show cause for retention in the Navy, because she did not have an unrestricted medical license, as required by the new policy. *See* AR 17–18; *see also* Secretary of the Navy Instruction ("SECNA-VINST") 1120.12A (1991) (requiring that every Navy physician have an unrestricted medical license in order to qualify for appointment as an Officer in the Navy Medical Corps).

On May 2, 2000, a Board of Inquiry reviewed Plaintiff's file and unanimously found that: she had not performed in a substandard manner; none of the specified reasons for the board's inquiry warranted separation for cause; and the case should be closed. *See* Gov't App. at 4. Nevertheless, on June 27, 2000, the Chief of Naval Personnel independently determined that Plaintiff was not qualified for promotion and informed Plaintiff that her promotion would be delayed pending a Final Decision by the Secretary of the Navy. *See* Gov't App. at 6. On March 5, 2002, Plaintiff applied to the Board for Correction of Naval Records ("BCNR"), seeking promotion to the rank of Captain. *See* AR at 27–40. On May 10, 2002, the Secretary of the Navy removed Plaintiff's name from the Fiscal Year 2000 Active Staff Promotion List. *Id.* at 17–18. On February 10, 2003, the BCNR denied Plaintiff's application for relief, based on the 1999 policy requiring that every Department Of Defense ("DOD") phy-

sician have a current unrestricted license, as required by SECNAVINST 1120.12A. *Id.* at 12–13; *see also* Gov't App. at 25. On March 31, 2003, Plaintiff requested a voluntary retirement from active duty. *See* Gov't App. at 17. On January 1, 2004, the Secretary of the Navy granted her request. *Id.* at 19.

## PROCEDURAL HISTORY

On September 26, 2000, Plaintiff filed a Complaint in the United States District Court for the District of Columbia alleging that DOD arbitrarily and capriciously issued a regulation that barred her promotion to the rank of Captain. On November 20, 2000, the Government filed a Motion to Dismiss. On August 15, 2001, the United States District Court granted the Government's motion on the basis of non-justiciability and failure to exhaust administrative remedies. *See Lewis v. Rumsfeld,* 154 F.Supp.2d 56, 57 (D.D.C. 2001). On August 21, 2001, Plaintiff filed a Notice of Appeal. On April 30, 2003, the United States Court of Appeals for the District of Columbia Circuit reversed and remanded, instructing Plaintiff to seek leave of the United States District Court to amend the Complaint to include a damages claims and to transfer the case to the United States Court of Federal Claims. *See Lewis v. Rumsfeld,* No. 01–5296, 2003 WL 21018861 (D.C.Cir. Apr.30, 2003). On May 6, 2003, Plaintiff filed an Amended Complaint and a Motion to Transfer that case to the United States Court of Federal Claims. On June 2, 2003, the United States District Court granted Plaintiff's motion.

On December 12, 2003, the case was assigned to the Honorable Lawrence M. Baksir, who assigned it to the Honorable Eric J. Bruggink for ADR pilot proceedings. On December 19, 2003, Judge Baskir recused himself and reassigned the case to the undersigned judge.

On January 21, 2004, a Second Amended Complaint was filed alleging, as a matter of law, that Plaintiff was promoted to the rank of Captain, or in the alternative, that the BCNR acted arbitrarily and capriciously when it refused to correct Plaintiff's record to show that she was promoted. *See* Second Amended Compl. ¶¶ 21–22. On February 26,

2004, the Government filed a Motion to Stay, pending final resolution of *Dysart v. United States,* No. 02–294C (Fed.Cl. May 5, 2003). On May 6, 2004, the United States Court of Appeals for the Federal Circuit issued that decision. *See Dysart v. United States,* 369 F.3d 1303, 1316 (Fed.Cir.2004) (holding that the Secretary of the Navy may remove an Officer's name from a promotion list at any time prior to appointment). The appellant advised the court that a petition for a writ of certiorari to the United States Supreme Court would be filed. No petition, however, was filed. On July 8, 2004, the court issued an Order granting the requested stay. On April 12, 2005, the court lifted the stay.

On January 24, 2005, the Government filed a Motion to Dismiss, pursuant to RCFC 12(b)(1), or in the alternative, for Judgment Upon the Administrative Record. On January 27, 2005, the Government filed the Administrative Record. On February 23, 2005, Plaintiff filed a Cross–Motion and Response. On February 28, 2005, a Third Amended Complaint was filed, alleging, as a matter of law, that Plaintiff was promoted to the rank of Captain, or in the alternative, that the BCNR acted arbitrarily and capriciously when it refused to correct Plaintiff's record to show that she was promoted, and seeking active duty pay, allowances, and retired pay of a Captain (O–6). *See* Third Amended Compl. ¶¶ 21–23. On April 8, 2005, the Government filed a Reply thereto. On April 12, 2005, Judge Bruggink ordered the case removed from the ADR process and returned to the undersigned judge for adjudication.

\* \* \*

On April 18, 2005, Plaintiff filed a Sur–Reply.

## DISCUSSION

### A. Jurisdiction.

The United States Court of Federal Claims has been authorized by Congress to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or

upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). In *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980), however, the United States Supreme Court held that the Tucker Act does not create any substantive right for monetary damages. Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages in order for the court to have jurisdiction. *See Todd v. United States,* 386 F.3d 1091, 1094 (Fed. Cir.2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act."); *see also Fisher v. United States,* 402 F.3d 1167, 1173–74 (Fed.Cir.2005) (*en banc*) (emphasis in original) (recognizing that *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472–73, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) articulated a new test that "demands a showing demonstrably lower .... It is enough that a statute creating a Tucker Act right be *reasonably amenable* to the reading that it mandates a right of recovery in damages ... a *fair inference* will do."); *Roth v. United States,* 378 F.3d 1371, 1384 (Fed.Cir.2004) ("Because the Tucker Act itself does not provide a substantive cause of action, ... a plaintiff must find elsewhere a money-mandating source upon which to base a suit."); *Khan v. United States,* 201 F.3d 1375, 1377 (Fed.Cir.2000) (quoting *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998)) ("The plaintiff 'must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.'").

Although the Tucker Act does not provide independent jurisdiction over claims for declaratory or injunctive relief, the court has authority to provide equitable relief if the action is collateral to a claim for monetary damages. *See* 28 U.S.C. § 1491(a)(2); [2] *see*

---

2. 28 U.S.C. § 1491(a)(2) provides:

To provide an entire remedy and to complete the relief afforded by the judgment, the court

*also Brown v. United States,* 105 F.3d 621, 624 (Fed.Cir.1997) ("The Tucker Act does not provide independent jurisdiction over such claims for equitable relief."); *Passaro v. United States,* 774 F.2d 456, 459 (Fed.Cir. 1985) ("Equity, to the extent that it can be administered by the [United States Court of Federal Claims], exists as an incident of general jurisdiction under the Tucker Act[.]").

Plaintiff's Third Amended Complaint properly alleges a money-mandating statute by invoking the Military Pay Act, 37 U.S.C. § 204, since that Act, in relevant part, provides: "a member of the uniform service who is on active duty ... [is] entitled to the basic pay of the pay grade to which assigned." 37 U.S.C. § 204(a); *see also Martinez v. United States,* 333 F.3d 1295, 1303 (Fed.Cir.2003) (*en banc* ) ("In the context of military discharge cases, the applicable 'money-mandating' statute that is generally invoked is the Military Pay Act, 37 U.S.C. § 204[.]"). Therefore, the court has jurisdiction to adjudicate the claims alleged in the Third Amended Complaint.

### B. Justiciability.

When legal challenges to final military decisions are raised, however, the court is obligated first to consider the justiciability of the legal question presented. *See Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953) ("[J]udges are not given the task of running the [military]. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates."); *see also Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir.1993) ("[J]udicial review is only appropriate where the Secretary [of the Navy]'s discretion is limited, and Congress has established 'tests and standards' against which the court can measure his conduct.").

■■■■ The United States Court of Appeals for the Federal Circuit specifically has held that determining whether a particular officer merits promotion does not fall within the judicial province. *See Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir.2002) (holding that the merits of the military's decision not to promote a service member are non-justiciable). Although the merits of a promotion determination are non-justiciable, however, the United States Court of Appeals for the Federal Circuit has recognized that the United States Court of Federal Claims has limited authority to adjudicate a constitutional challenge arising from a procedure used by the Armed Forces. *See Adkins v. United States,* 68 F.3d 1317, 1323 (Fed.Cir.1995) (emphasis in original) ("[A]lthough the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy."); *see also Murphy,* 993 F.2d at 873 ("When the military is given unlimited discretion by Congress, it is nevertheless bound to follow its own procedural regulations if it chooses to implement some."). Therefore, when the Armed Forces have issued a Final Decision, the court can intervene only to ensure that the decision was made in a proper procedural manner. *See Wagner v. United States,* 365 F.3d 1358, 1361 (Fed.Cir.2004) ("[W]e will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence."); *see also Carmichael v. United States,* 298 F.3d 1367, 1373 (Fed.Cir.2002) ("If the Navy failed to follow its own policies and did not properly provide [plaintiff] with religious accommodation procedures, [plaintiff's] discharge may be involuntary because he was faced with [an] untenable option[.]"); *Murphy,* 993 F.2d at 873–74 (holding that the United States Court of Federal Claims may decide whether the military followed procedures set forth in its own regulations).

### C. Standard Of Decision On A Motion To Dismiss For Lack Of Jurisdiction.

In ruling on a motion to dismiss, the court is "obligated to assume all factual allegations

---

may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.

to be true and to draw all reasonable inferences in plaintiff's favor." *See Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir. 1995) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)); *see also* RCFC 12(b)(1). As the non-moving party, however, plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction."). A federal trial court may not grant a motion to dismiss unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683 (requiring only that "the allegations of the complaint should be construed favorably to the pleader.").

### D. Standard Of Decision For Judgment On The Administrative Record.

The standard of review for Judgment on the Administrative Record, pursuant to RCFC 56.1, is similar but not identical to a motion for summary judgment under RCFC 56(c). *See Bannum, Inc. v. United States,* 404 F.3d 1346, 1355 (Fed.Cir.2005). The standard for a motion for summary judgment is whether the moving party has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In contrast, the standard for Judgment on the Administrative Record is narrower, *i.e.,* given all the disputed and undisputed facts, whether the plaintiff has met the burden of proof to show that the decision was not in accordance with the law. *See Bannum,* 404 F.3d at 1357 (instructing the court to make "factual findings under RCFC 56.1 from the [limited] record evidence as if it were conducting a trial on the record."). In the case of a final military decision, the review of the Administrative Record is limited to determining whether applicable procedures were followed and the

decision is supported by "substantial evidence." *See Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983) ("[C]ourts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence."). Specifically, the court may not retry the case on the merits. *Id.* at 1157.

Armed Forces Board of Correction decisions may be reviewed only to determine whether they are arbitrary and capricious or otherwise contrary to law. *See, e.g., Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) ("[Military correction board] decisions are subject to judicial review [by the federal courts] and can be set aside if they are arbitrary, capricious, and not based on substantial evidence."); *Porter v. United States,* 163 F.3d 1304, 1312 (Fed. Cir.1998) ("When called upon to review a decision of a corrections board, or of a Secretary taken upon recommendation from a corrections board, the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law."). The plaintiff bears the burden of proving such behavior by "cogent and clearly convincing evidence." *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986). Such proof must also "overcome the strong, but rebuttable, presumption that the administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Porter,* 163 F.3d at 1316 (quoting *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 813 (1979)); *see also Hoffman v. United States,* 894 F.2d 380, 385 (Fed.Cir.1990) (quoting *Guy v. United States,* 221 Ct.Cl. 427, 608 F.2d 867, 870 (1979)) ("Military officers, like other public officials, are presumed to 'discharge their duties correctly, lawfully, and in good faith.' ").

### E. The United States Court Of Appeals For The Federal Circuit Has Held That A Military Officer Cannot Claim An "Automatic Promotion."

■ The process for promotion in the Navy is as follows. First, the Secretary of the Navy convenes a Selection Board that

recommends Officers between the grades of lieutenant (junior grade) and rear admiral (lower half) for promotion. *See* 10 U.S.C. § 611(a). The Secretary of the Navy then forwards the names to the Joint Chiefs of Staff, if required, and to the Secretary of Defense for transmittal to the President for approval or disapproval. *See* 10 U.S.C. §§ 618(a)-(d).

The President is granted sole authority to appoint military Officers "by and with the Advice and Consent of the Senate." U.S. CONST. art. II, § 2, cl. 2; *see also Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 155–56, 2 L.Ed. 60 (1803). Therefore, upon receipt of the Selection Board's report, the President decides whether the Officers listed should be promoted, in the order of seniority:

> [O]fficers on a promotion list for a competitive category shall be promoted to the next higher grade when additional officers in that grade and competitive category are needed. Promotions shall be made in the order in which the names of officers appear on the promotion list and after officers previously selected for promotion in that competitive category have been promoted.

10 U.S.C. § 624(a)(2). Next, the President submits any approved names to the Senate for confirmation. *See* 10 U.S.C. § 629(b). If a name is not confirmed, it is removed from the promotion list. *Id.* The President, however, has absolute discretion to remove an Officer's name from the promotion list. *See Dysart,* 369 F.3d at 1311 ("The constitutional process allows the President complete discretion in choosing whether or not to appoint an officer. The statute does not and cannot alter that process by providing for automatic appointment.").

Once an Officer is confirmed by the Senate, however, the Secretary of the Navy is responsible for setting the date of appointment that establishes the date of promotion to the next highest rank. *See* 10 U.S.C. § 741(d)(2) ("Except as otherwise provided by law, the date of rank of an officer who holds a grade as the result of a promotion is the date of his appointment to that grade.");

*see also* 10 U.S.C. § 624(b)(2). Accordingly, the Secretary of the Navy has authority to issue regulations to delay an Officer's appointment where "there is cause to believe that the officer is mentally, physically, morally, or professionally unqualified to perform the duties of the grade for which he was selected for promotion." 10 U.S.C. § 624(d)(2); *see also* SECNAVINST 1420.1A (providing that the Secretary of the Navy must apply to remove an Officer from a promotion list for any grade below O–7). The Secretary must follow two steps in exercising this authority. First, the Secretary must provide the Officer whose promotion has been delayed with "written notice of the grounds for the delay, unless it is impracticable to give such written notice before the date of the appointment, in which case such written notice shall be given as soon as practicable." 10 U.S.C. § 624(d)(3). Second, the Officer's promotion "may not be delayed under this subsection for more than six months after the date on which the officer would otherwise have been appointed unless the Secretary concerned specifies a further period of delay." 10 U.S.C. § 624(d)(4); *see also* SECNAVINST 1420.1A ¶ 23. The presidential authority to remove the name of any Officer from a list of Officers recommended for promotion is delegated to the Secretary of Defense for grades below rear admiral (lower grade). *See* 3 U.S.C. §§ 301, 302; *see also* 10 U.S.C. § 629(a); Exec. Order No. 12,396, § 1(b), 47 FED. REG. 55,897 (Dec. 9, 1982); *Law v. United States,* 11 F.3d 1061, 1067 (Fed.Cir.1993) (holding that 3 U.S.C. § 302 does not require the President expressly to delegate the authority to deny or affirm the promotion of an Officer).

In this case, the Chief of Naval Personnel determined that Plaintiff was not qualified for promotion because she did not have an unrestricted medical license. *See* Gov't App. at 6. On June 27, 2000, Plaintiff was informed that the Chief of Naval Personnel was delaying her promotion pending a Final Decision by the Secretary of the Navy. *Id.*[3] On May 10, 2002, the Secretary of the Navy removed Plaintiff's name from the Fiscal Year 2000

---

3. The record does not address whether Plaintiff asked for a waiver under 10 U.S.C. § 1094(a)(1) or took any steps to obtain an unrestricted license after being notified of the promotion delay.

Active Staff Promotion List, denying her promotion. *See* AR at 17–18. The President has complete discretion to take such action and the record does not evidence any procedural deficiencies that would offend constitutional requirements of due process. *See Dysart*, 369 F.3d at 1311–14. Therefore, the court grants the Government's Motion for Judgment on the Administrative Record.

### CONCLUSION

For these reasons, the court has determined that the Government's Motion for Judgment on the Administrative Record is granted. Accordingly, the Government's Motion to Dismiss is moot and Plaintiff's Cross-Motion for Summary Judgment on the Administrative Record is denied. The Clerk of the court is ordered to enter judgment in favor of the Government.

**IT IS SO ORDERED.**