# United States Court of Appeals for the Federal Circuit

05-5155

EVELYN L. LEWIS,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Eugene R. Fidell, Feldesman Tucker Leifer Fidell LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief was Matthew S. Freedus.

Douglas K. Mickle, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director. Of counsel was Lieutenant Marc Rosen, General Litigation Division, Office of the Judge Advocate General's Corps, United States Department of the Navy, of Washington, DC.

Appealed from: United States Court of Federal Claims

Judge Susan G. Braden

# United States Court of Appeals for the Federal Circuit

05-5155

EVELYN L. LEWIS,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:    August 14, 2006

_____

Before RADER, <u>Circuit Judge</u>, CLEVENGER, <u>Senior Circuit Judge</u>, and DYK, <u>Circuit Judge</u>.

DYK, <u>Circuit Judge</u>.

Dr. Evelyn Lewis ("Lewis") appeals the decision of the Court of Federal Claims denying relief from the Secretary of the Navy's decision to delay her promotion and subsequently to remove her name from a military promotion list.  Lewis urges that she was promoted as a matter of law under 10 U.S.C. § 624, and also that the decision of the Board of Correction for Naval Records ("BCNR"), sustaining the Secretary's actions denying her promotion, was based on an incorrect interpretation of 10 U.S.C. § 1094(a)(1).  We hold that Lewis' claim that she was promoted as a matter of law is barred by our decision in <u>Dysart v. United States</u>, 369 F.3d 1303 (Fed. Cir. 2004), and that the BCNR's decision denying her request for a correction of her personnel record

was based on a proper understanding of 10 U.S.C. § 1094(a)(1). We therefore affirm the decision of the Court of Federal Claims.

BACKGROUND

At all relevant times, Lewis was an active-duty Commander in the Navy Medical Corps, and held a "restricted" Oklahoma medical license that limited her practice of medicine to federal facilities. On April 21, 1999, the President nominated Lewis for promotion to the rank of Captain. On June 30, 1999, the Senate confirmed her nomination. However, she could not achieve the rank of captain without being appointed to the position by the President. Dysart v. United States, 369 F.3d 1303, 1315 (Fed. Cir. 2004).

Prior to October 1, 1999, 10 U.S.C. § 1094 required all "health-care professionals" in the Department of Defense ("DoD") "provid[ing] health care independently as . . . health-care professional[s]" to carry a "current license." 10 U.S.C. § 1094(a)(1) (1994). It defined "health-care professional" as "person[s] [including physicians] providing direct patient care." Id. at § 1094(d)(2). On October 1, 1999, a new sentence was added to section 1094(a)(1), which provided that "[i]n the case of a physician, the physician may not provide health care as a physician under this chapter unless the current license is an unrestricted license . . . ." 10 U.S.C. § 1094(a)(1) (2000).

In December 1999, the Navy Bureau of Medicine and Surgery directed Lewis to show cause as to whether she should be retained in the Navy, because she did not have an unrestricted medical license. On May 2, 2000, a Navy Board of Inquiry (BOI) conducted an investigation and found that separation was not warranted because Lewis

"ha[d] not committed substandard performance of duty as evidenced by a failure to maintain the required professional licensure to practice medicine." J.A. at 147. Nonetheless, on June 27, 2000, the Chief of Naval Personnel determined that Lewis "may not be professionally qualified for permanent promotion" because she lacked "a valid state medical license recognized by the Navy," and notified Lewis that her appointment would be delayed pending a final decision by the Secretary of the Navy. J.A. at 149.

On September 26, 2000, Lewis filed a complaint in the United States District Court for the District of Columbia asserting that the action delaying her promotion was arbitrary and capricious. In an August 15, 2001, decision the court granted the government's motion to dismiss, holding the claim was non-justiciable and Lewis had failed to exhaust administrative remedies before the BCNR. See Lewis v. Rumsfeld, 154 F. Supp. 2d 56, 57 (D.D.C. 2001). Lewis appealed to the United States Court of Appeals for the District of Columbia Circuit on August 21, 2001.

Lewis' situation continued to evolve while her case was pending before the District of Columbia Circuit.

Section 624(a) of title 10, a provision of the Defense Officer Personnel Management Act ("DOPMA"), provides that "[e]xcept as provided in subsection (d), officers on a promotion list for a competitive category shall be promoted to the next higher grade when additional officers in that grade and competitive category are needed." 10 U.S.C. § 624(a)(2) (2000). Section 624(d) provides that "[a]n officer's appointment may not be delayed . . . more than 18 months after the date on which such officer would otherwise have been appointed . . . ." 10 U.S.C. § 624(d)(4) (2000).

Under this provision, the last date to which Lewis' appointment could be delayed was February 1, 2002. By this date, Lewis had neither been removed from the promotion list nor appointed.

On March 5, 2002, Lewis applied to the BCNR, seeking a determination that she had been promoted to the rank of Captain by operation of law.[1] On May 10, 2002, after the expiration of the 18-month period, the Secretary of the Navy finally removed Lewis' name from the promotion list. The BCNR denied Lewis' application for relief on February 10, 2003, holding that under Secretary of the Navy Instruction ("SECNAVINST") 1120.12A and the applicable DoD policy, "the Navy properly considered [Lewis] to be professionally unqualified for promotion without an unrestricted license . . . ." J.A. at 254. On March 31, 2003, Lewis requested voluntary retirement from active duty, and the Secretary of the Navy granted her request effective January 1, 2004.

On April 30, 2003, the District of Columbia Circuit issued a decision remanding to the district court. In a per curiam order, the court advised Lewis to seek leave of the district court to amend her complaint to include a damages claim, and to transfer the case to the Court of Federal Claims. See Lewis v. Rumsfeld, No. 01-5296, 2003 WL 21018861 (D.C. Cir. Apr. 30, 2003). Lewis did so, and on June 2, 2003, the district court granted her motion. The case was transferred to the Court of Federal Claims.

---

[1] Section 1552 of title 10 gives the military secretaries power to correct military records using civilian boards. It provides that "[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(2) (2000).

In the Court of Federal Claims, Lewis alleged that she was promoted to the rank of Captain as a matter of law by operation of section 624(d). She also contended that she was denied promotion based upon an erroneous interpretation of section 1094. She sought pay and allowances of a Captain from August 1, 2000, to December 31, 2003, and the retired pay of a Captain.

The government moved to dismiss, or in the alternative, for judgment on the administrative record. Lewis v. United States, 67 Fed. Cl. 158, 163 (2005). The Court of Federal Claims (Judge Susan G. Braden) held that it had jurisdiction over Lewis' claim under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), and the Military Pay Act, 37 U.S.C. § 204 (2000). Id. at 160-61. While recognizing that "the merits of a promotion determination are non-justiciable," the court held that Lewis' claim was justiciable because "the court can intervene . . . to ensure that the [promotion] decision was made in a proper procedural manner." Id. at 160. However, the court held that under our decision in Dysart v. United States, 369 F.3d at 1311-14, the President has complete discretion whether to appoint military officers. Lewis, 67 Fed. Cl. at 163. Accordingly, the court granted the government's motion for judgment on the administrative record. Id.

The appellant timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review legal determinations of the Court of Federal Claims, such as a judgment on the administrative record, without deference. Haselrig v. United States, 333 F.3d 1354, 1355 (Fed. Cir. 2003).

05-5155                                5

The Tucker Act, 28 U.S.C. § 1491, authorizes actions for monetary relief against the United States to be brought in the Court of Federal Claims, but does not itself provide a substantive cause of action absent a money-mandating statute. Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc). The relevant money-mandating statute in this case is the Military Pay Act, 37 U.S.C. § 204, which "provides for suit in the Court of Federal Claims when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay." Dysart, 369 F.3d at 1315; see also, e.g., Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997).[2]

Here Lewis seeks military pay that was denied as a result of the Secretary's decision to delay Lewis' promotion and to remove Lewis' name from the promotion list.[3]

While resort to a correction board is not mandatory, Martinez, 333 F.3d at 1305, where, as here, a service member has elected to pursue relief before a corrections board, we have reviewed the board's decision to determine whether it is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Id. at 1314; see also, e.g., Chappell v. Wallace, 462 U.S. 296, 303 (1983) ("Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence."); Porter v. United States, 163 F.3d 1304, 1312 (Fed. Cir. 1998); Armstrong v. United States, 205 Ct. Cl. 754, 761 (1974).

---

[2] Retirement pay claims are brought under other money-mandating statutes. See, e.g., 10 U.S.C. §§ 6323, 6333, 1370; see also Sawyer v. United States, 930 F.2d 1577 (Fed. Cir. 1991) (holding that the disability retirement pay statute, 10 U.S.C. § 1201, is money-mandating).

[3] The corrections board statute, 10 U.S.C. § 1552, is not a money-mandating statute that provides the basis for a Tucker Act suit. Martinez, 333 F.3d at 1315.

I

We have confronted decisions by the military concerning officer retention and promotion in a variety of contexts. In general, we have said that the questions of the fitness of an officer to serve on active duty, and in what capacity the officer should serve, are not for the courts to decide. Fisher v. United States, 402 F.3d 1167, 1180-81 (Fed. Cir. 2005) (en banc) (noting that the question of "who should be allowed to serve on active duty, and in what capacity" is generally nonjusticiable (citing Adkins v. United States, 68 F.3d 1317, 1323 (Fed. Cir. 1995))); see also Orloff v. Willoughby, 345 U.S. 83, 91 (1953); Dysart, 369 F.3d at 1315; Adkins, 68 F.3d at 1324. In addition, the Constitution expressly provides that only the President has the authority to appoint an officer, and thus to take the final step in the promotion process. As such, in Dysart v. United States, we made clear that "the President's decision not to appoint is a discretionary act that cannot be reviewed by a court," 369 F.3d at 1317, and that Congress cannot provide for automatic appointments. Id. ("Congress does not have the authority to require the President to exercise his appointment power . . . .").

However, the Constitution, statutes, and regulations can appropriately regulate the categories of persons who may be appointed to particular positions and the process by which those appointments are made. For example, Congress can restrain the President's authority to appoint particular classes of persons to officer positions or bar appointment unless particular procedures are followed. See, e.g., 10 U.S.C. §§ 611-41 (2000); see also U.S. Const. art. II, § 2, cl. 2; Dysart, 369 F.3d at 1306-07. If an individual has a "clear cut legal entitlement" to a position, but subordinate officials in the government misinterpret the Constitution, statutes, or regulations, and improperly

decline to recommend that individual for nomination or appointment, redress may be available in the courts. <u>Smith v. Sec'y of the Army</u>, 384 F.3d 1288, 1294-95 (Fed. Cir. 2004) (stating that an action for money arises under the Military Pay Act when an individual has a "clear-cut legal entitlement" to a promotion). Thus, the courts can review promotion decisions for violations the Constitution,[4] statutes,[5] or regulations.[6]

---

[4] <u>See generally, e.g.</u>, <u>Chappel</u>, 462 U.S. at 303 (recognizing that enlisted men challenging denial of promotions based on unconstitutional discrimination can seek relief from the board under the correction board statute, and that "Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence."); <u>Berkley v. United States</u>, 287 F.3d 1076, 1090-91 (Fed. Cir. 2002) (addressing claim that reduction-in-force violated officers' Fifth Amendment right to equal protection by taking into account racial and gender characteristics in selecting them for involuntary separation).

[5] <u>See, e.g.</u>, <u>Richey v. United States</u>, 322 F.3d 1317, 1325-26 (Fed. Cir. 2003) (where discharge resulted from allegedly improper non-promotion decisions, court reviewed the military's promotion procedures for compliance with 10 U.S.C. § 628); <u>Porter</u>, 163 F.3d at 1311-12 (same); <u>Sanders v. United States</u>, 594 F.2d 804, 814, 817 (Ct. Cl. 1979) (where discharge resulted from improperly denied promotions, court concluded that the military had "violated both the spirit and letter of the statute [10 U.S.C. § 3442(c), 8442(c) (1976) (repealed 1980)] and regulations."); <u>Doyle v. United States</u>, 599 F.2d 984, 996 (Ct. Cl. 1979) (holding that promotion decision violated statutory requirement governing composition of selection board); <u>see also</u> <u>Roth v. United States</u>, 378 F.3d 1371, 1385 (Fed. Cir. 2004) (noting that "the test[s] or standards against which this court measures the military's conduct [such as failure to promote] are inherent: they are the applicable statutes and regulations" (quoting <u>Adkins</u>, 68 F.3d at 1323)).

[6] <u>See, e.g.</u>, <u>Roth</u>, 378 F.3d at 1386-87, 1393 (holding promotion decision was unlawful because "Officer Effectiveness Reports" were adversely affected by violation of Air Force Regulation 36-10; requiring Air Force to reevaluate promotion decision); <u>Evensen v. United States</u>, 654 F.2d 68 (Ct. Cl. 1981) (holding that promotion decision violated regulatory requirement governing composition of selection board); <u>Sanders</u>, 594 F.2d at 817-18 (military's refusal to consider officer's eligibility for promotion based on properly corrected record violated a regulation requiring correction of an officer's record upon a showing of "probable material error or injustice.").

In such an action, the court cannot, of course, order the President or his delegate to make the appointment. See Dysart, 369 F.3d at 1317 ("[T]he President's decision . . . whether or not to exercise his appointment power is discretionary, and . . . the President cannot be compelled to appoint military officers."); Law v. United States, 11 F.3d 1061, 1065 (Fed. Cir. 1993) (stating that the courts are "without authority to grant [ ] promotion[s]").[7] The question becomes whether the officer by delegation is exercising Presidential discretion in declining to grant the appointment or whether the official is improperly construing the Constitution, a statute, or regulation directing appointments (in which case the action is reviewable).

The award of back pay for an appointment that was denied by a subordinate official, as a result of an improper construction of the Constitution, a statute, or a regulation, is permissible because "[i]t is . . . assumed that the constitutionally-mandated steps in the appointment process-nomination, confirmation, and appointment-would be followed absent improper action by subordinate officials, and that the rare exercise of Presidential (or Senate) discretion not to make the appointment creates no Article III bar to the action in the Court of Federal Claims," for back pay. Dysart, 369 F.3d at 1315;

---

[7] See also Randall v. United States, 95 F.3d 339, 348 (4th Cir. 1996) ("The district court would have no authority to order the Secretary of the Army to promote Plaintiff to Lieutenant Colonel."); Adkins, 68 F.3d at 1324 (an officer's "prayer that the Court of Federal Claims direct the Secretary to promote him to the rank of colonel plainly was a request for impermissible 'interfer[ence] with legitimate Army matters.'" (quoting Orloff, 345 U.S. at 94)); Yee v. United States, 512 F.2d 1383, 1388 (Ct. Cl. 1975) (denying a request for a court-ordered promotion, observing that "[c]ourts generally are not in the 'promotion business'").

see Glidden Co. v. Zdanok, 370 U.S. 530, 568-71 (1962); see also Chicago & S. Air Lines v. Waterman S.S. Corp., 333 U.S. 103, 113-14 (1948).[8]

A

Against this backdrop, we can quickly dispose of Lewis' contention that she was promoted by operation of law pursuant to 10 U.S.C. § 624(a)(2) on the theory that the language of 624(d) mandates automatic appointment when the 18-month statutory delay period expires. We addressed and rejected the same argument, with respect to the same statute, in Dysart. We held that "the language of [section 624] does not provide for automatic appointment . . . ." 369 F.3d at 1313. We further held that the statute could not constitutionally provide for automatic appointment because "military officers must be appointed pursuant to the constitutional process, which requires appointments at the discretion of the President, not automatic appointments pursuant to statute." Id. at 1313, 1315.

While Lewis contends that Dysart was wrongly decided, it is, of course, binding on this panel. Further, Lewis' claim is not distinguishable from Dysart. It is of no consequence that the President himself removed Dysart's name from the list more than six months after the deadline referred to in 624(d)(4), whereas the Secretary removed Lewis' name acting as a delegate of the President.[9] The premise of Lewis' argument is

---

[8] See also Law, 11 F.3d at 1065 (holding that the court has the authority to recognize a promotion by awarding back pay); cf. Wood v. United States, 107 U.S. 414, 417 (1883) (holding that Congress may not change an officer's grade, which requires appointment, but may change an officer's pay and direct that the officer be paid as though he had been appointed to a higher grade).

[9] Just as the authority to appoint military officers can be delegated, see, e.g., Orloff, 345 US. at 90; United States v. Moore, 95 U.S. 760, 762 (1877); Dysart

05-5155                                          10

the same as Dysart's--that section 624 provides for automatic appointment. We rejected this premise in Dysart, and decline to revisit it now.

II

Lewis also claims that the BCNR erred in sustaining the Secretary's decision to deny her promotion. She contends that an incorrect interpretation of 10 U.S.C. § 1094 resulted in the denial of her promotion.[10] The DoD policy implemented by the Secretary is reflected in a policy memorandum that was issued by the Assistant Secretary of Defense for Health Administration ("ASD(HA)"). The memorandum provides:

> Any physician license in a licensure category that restricts the physician to practice in a federal facility or within some other confined limits does not comply with the requirement [of § 1094(a)(1)] for an "unrestricted license." Unless waived [under § 1094(a)(2)], all physicians must have at least one current, unrestricted license . . . . Effective October 1, 1999, a physician without a full-scope license may not provide health care as a physician, unless a waiver is granted under this policy.

J.A. at 140. In a later memorandum, the ASD(HA) explained that the licensing requirement applies to "[a]ll physicians in the DoD," including "health care personnel whose duties are entirely administrative in nature and do not involve the provision of patient care." J.A. at 142. Lewis contends that the DoD policy of requiring all physicians to carry an unrestricted license is inconsistent with section 1094.

---

1312, so too can the authority to decline to appoint officers. D'Arco v. United States, 441 F.2d 1173, 1175 (Ct. Cl. 1971); see also Dysart, 369 F.3d at 1316.

[10] In addition to arguing that section 1094 does not bar her promotion, Lewis urges that the BCNR's reliance on SECNAVINST 1120.12A was erroneous because SECNAVINST 1120.12A provides no support for the licensing requirement. The question whether the BCNR properly relied on SECNAVINST 1120.12A is irrelevant, because the BCNR's decision was fully supported by section 1094(a) itself.

11

Prior to October 1, 1999, section 1094 required all persons "provid[ing] health care independently as . . . health-care professional[s]" to possess a "current license." Section 1094(e)(2) provided that "[t]he term 'health-care professional' means a physician, dentist, clinical psychologist, or nurse and any other person providing <u>direct patient care</u> as may be designated by the Secretary of Defense in regulations." 10 U.S.C. § 1094(e)(2) (emphasis added).

Before 1999 the statute did not include any special requirement applicable to physicians. 10 U.S.C. § 1094(a)(1) (1994). In October 1999, a second sentence was added to section 1094(a)(1) addressed specifically to physicians:

> In the case of a physician, the physician may not provide health care as a physician under this chapter unless the current license is an unrestricted license that is not subject to limitation on the scope of practice ordinarily granted to other physicians for a similar specialty by the jurisdiction that granted the license.

10 U.S.C. § 1094(a)(1) (2000), as amended by Pub. L. 105-261, 112 Stat. 2073.

Lewis points out that section 1094 only requires any "physician . . . provid[ing] <u>health care as a physician</u>" to carry an unrestricted license. In Lewis' view, a physician only provides health care as a physician if he or she provides direct patient care. Lewis bases this argument on the fact that a physician who does not provide direct patient care is not a "health care professional" within the meaning of the first sentence of 1094(a)(1) of the statute. However, it is irrelevant that such a physician providing indirect care may not meet the statutory definition of "health care professional" in the pre-1999 version of the statute. The question here is what is meant by the second sentence, and the operative terms do not require direct care. The definition of physician is "a person who is legally qualified to practice medicine," and the practice of "medicine"

12

is the provision of health care. Random House Webster's Unabridged Dictionary at 1462 (2d ed. 1998).[11] "Healthcare" is defined as "the field concerned with the maintenance or restoration of the health of the body or mind." Id. at 882. Based on the language of the statute, a physician who provides indirect care "provide[s] health care as a physician" and is subject to the unrestricted licensing requirement. Lewis does not contend that her duties were unrelated to the provision of health care. Indeed, all of her assignments appear to have involved the provision of health care.[12]

This broader definition is confirmed by the history and structure of the statute. We must assume that the statute was amended in 1999 for a purpose. The evident purpose of the amendment was to impose special requirements for physicians not applicable to other health care professionals. The fact that "health care professionals" generally were not required to have a license unless they were providing "direct patient care" says nothing about the statute's special requirements for physicians. Indeed, the omission of the "direct patient care" language from the special provision applicable to physicians added by the 1999 amendment strongly suggests in and of itself that the license requirement for physicians went beyond direct patient care.

---

[11]  Id. at 1194 (defining "medicine" as "the art or science of restoring or preserving health or due physical condition, as by means of drugs, surgical operations or appliances, or manipulations").

[12]  For example, she served in various positions at the Uniformed Services University of the Health Sciences in Bethesda, Maryland, including Acting Vice President in the Office of Recruitment and Minority Affairs; Director, Family Practice Clerkship; Director, University Health Center; Vice Chair, Department of Family Medicine.

Our interpretation is reinforced by the policy memoranda issued by the Assistant Secretary of Defense for Health Administration to which we owe at least <u>Skidmore</u> deference.  <u>See</u> <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944).  The ASD(HA) is "the principal staff assistant and advisor to the . . . Secretary and Deputy Secretary of Defense for all DoD health policies, programs, and activities" and is tasked with "effectively execut[ing] the Department's medical mission."  32 C.F.R. § 367.3 (2005).  The ASD(HA)'s memorandum of January 9, 1999, set forth the DoD's view that section 1094(a)(1) requires that "all physicians must have at least one currecnt unrestricted license . . . ."  J.A. at 140.  The later memorandum acknowledged that "[p]hysicians in purely administrative positions are not unusual," but stated that "[t]he vast majority of these positions are predicated on the knowledge base and credentials unique to physicians," and thus reaffirmed that the licensing requirement applies to these physicians as well.  J.A. at 142.

We therefore conclude that Lewis was not denied promotion based on an incorrect interpretation of section 1094.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Federal Claims.

## <u>AFFIRMED</u>

## COSTS

No costs.