NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JON T. HOFFMAN,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5106

---

Appeal from the United States Court of Federal Claims in No. 11-CV-0904, Judge Nancy B. Firestone.

---

Decided: March 31, 2014

---

JON T. HOFFMAN, of Springfield, Virginia, pro se.

MICHELLE R. MILBERG, Trial Attorney, Commercial Litigation Branch, Civil Division, United State Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were STUART F. DELERY, Assistant Attorney General, BRYANT G. SNEE, Acting Director, and FRANKLIN E. WHITE, JR., Assistant Director.

---

Before MOORE, REYNA, and WALLACH, *Circuit Judges.*

PER CURIAM.

In this military pay case, U.S. Marine Corps Col. Jon T. Hoffman claims that he is entitled to a disability retirement under 10 U.S.C. § 1201 (2006 & Supp. II 2008) for a disease that he alleges was incurred in-service. The Navy processed Col. Hoffman through its disability evaluation system. On April 8, 2008, Col. Hoffman was denied a disability retirement by a Formal Physical Evaluation Board ("PEB"). The Formal PEB determined that although Col. Hoffman suffers from amyloidosis, his illness was in remission and he was otherwise "Fit" for service. Col. Hoffman appealed the ruling to the Board of Corrections for Naval Records ("BCNR"). The BCNR affirmed the PEB's "Fit" determination. He subsequently filed a military pay complaint at the United States Court of Federal Claims seeking retroactive disability retirement pay. On cross-motions for judgment on the administrative record, the Court of Federal Claims held in favor of the government. This court affirms.

### BACKGROUND

Col. Hoffman began his career with the Marine Corps in 1976 as an infantry officer. He remained on active duty until 1992, and later in his active service, Col. Hoffman served as a Field Historian within the Marine Corps History Division. During his time in the reserves after 1992, Col. Hoffman was periodically placed on active duty, and on September 30, 2008, he was transferred to the retired reserves list. Col. Hoffman was credited with more than twenty-eight years of service, seventeen of which were on active duty.

Col. Hoffman's diagnosis with amyloidosis that he alleges was incurred during active duty underlies his claim for disability retirement. Amyloidosis

is a rare disease striking 2500–4000 patients annually in the continental United States. It is a

deposition disease caused by the production of abnormal light chains by clonal plasma cells in the bone marrow. . . . [T]he accumulation of amyloid deposits in the heart, kidneys, liver, GI tract and autonomic nervous system leads to progressive disability, organ failure, and early death.

J.A. 80. The record reflects that Col. Hoffman may have had symptoms related to amyloidosis beginning in 1999, and in December 2005, doctors performed a heart biopsy and concluded that he was suffering from amyloidosis.

Soon after his diagnosis, he reported his condition to the Navy on December 29, 2005. Over the next month, a cardiologist and a hematologist at Bethesda Naval Hospital examined Col. Hoffman. On March 6, 2006, Col. Hoffman's command unit prepared a non-medical assessment indicating, inter alia, "that he was not worldwide deployable and did not have good potential for continued military service" due to his disease. *Hoffman v. United States*, 108 Fed. Cl. 106, 112 (2012).

Col. Hoffman's case was referred to the Navy's Chief of Bureau of Medicine and Surgery ("CHBUMED") on March 27, 2006. On June 7, 2006, CHBUMED determined that Col. Hoffman was "not physically qualified" for retention in the reserves due to his amyloidosis—a decision that was subsequently endorsed by the Marine Corps Mobilization Command on November 15, 2006. A "not physically qualified" determination indicates that a reservist is unable to continue service due to non-duty related disease or injury which precludes the service member from performing his or her duties. U.S. Dep't of Navy, Sec'y of the Navy Instr. ("SECNAVINST") 1850.4E ¶ 2055 (April 30, 2002).

Upon receipt of the November 15, 2006 decision, Col. Hoffman requested that Marine Corps Mobilization Command grant him a notice of eligibility ("NOE") and find that he had incurred his illness in the line of duty.

An NOE is of significance in this context because a reservist without an NOE is not normally eligible to receive disability retirement, *see id.* 1850.4E ¶ 3408, whereas a reservist with an NOE and found to be "Unfit" will be eligible for disability benefits, *see id.*1850.4E ¶ 3201(b)(2). An NOE is issued if it is determined that the injury or disease was incurred or aggravated in the line of duty. *Id.* 1770.3D ¶ 6(k). A reservist who has received an NOE will be processed into the DES differently from one who does not have an NOE. *See id.* 1850.4E ¶ 3201(b)(2); ¶ 2055.

A reservist without an NOE, like Col. Hoffman, may still obtain disability benefits, if upon referral to the PEB, the PEB finds that the reservist is "Unfit" and further finds that the disabling condition was incurred "[w]hile . . . the member was ordered to active duty and serve[d] a period of active duty greater than 30 days; and . . . [his/her] medical records contain documentation as to the nature of the member's conditions including the approximate date of its incurrence [or] aggravation." *Id.* 1850.4E ¶ 3201(b)(3); ¶ 2055. The PEB is permitted to make a "Fit" or "Unfit" determination if it determines that the condition was incurred or aggravated during a period of active duty (duty related impairment). *Id.* If the PEB cannot determine that the member's condition was incurred or aggravated during active duty pursuant to ¶ 3201(b)(3), the PEB will not make "Fit" or "Unfit" finding, but rather, the PEB will make a "physically qualified" or "not physically qualified" determination for active duty or retention, *id.*, and disability benefits will not be awarded. If a "not physically qualified" for retention determination is made, the service member will be discharged from service.

Accordingly, on December 18, 2006, the Marine Corps Mobilization Command rejected Col. Hoffman's request for an NOE, and instructed that he had the option to appeal the CHBUMED finding that he was "not physically qualified" to the PEB. He did so and on April 4, 2007,

an Informal PEB convened to consider Col. Hoffman's case.

On April 18, 2007, Col. Hoffman was notified that he had been found "Unfit," with a recommended disposition that he was "not physically qualified to continue reserve status." J.A. 335. The Informal PEB further found that the disability was "not a proximate result of performing military duty," *id.*, and that the disability may be permanent. Col. Hoffman sought reconsideration which the Informal PEB denied.

Col. Hoffman requested that his case be heard by a Formal PEB. "A Formal PEB hearing provides an opportunity for the member to present additional material to support his or her case. Once a hearing has convened, any preliminary findings of the Informal PEB are null and void and are of no precedential value to the Formal PEB or the member." SECNAVINST 1850.4E ¶ 4301(c).

On July 12, 2007, a Formal PEB determined that Col. Hoffman should undergo additional medical evaluation. As a result, Col. Hoffman was examined by an orthopedist on July 30, 2007, a cardiologist on August 9, 2007 (where he received an echocardiogram), and he underwent a treadmill stress test on September 10, 2007. Col. Hoffman also testified before the Formal PEB on February 14, 2008, and on April 8, 2008, the Formal PEB issued its final decision, finding that Col. Hoffman was "Fit" to continue naval service.

On April 25, 2008, Col. Hoffman filed a petition for relief from the Formal PEB determination with the Navy Council of Review Boards ("NCRB"). He alleged that he was not "Fit" for service and that he was entitled to disability retirement benefits. On May 30, 2008, the NCRB denied the petition. In denying the petition for relief the NCRB explained that the medical evidence established Col. Hoffman would be able to continue to engage in a level of activity consistent with the duties of

his pay grade. The NCRB noted although Col. Hoffman "may not be world-wide deployable, able to complete the [Physical Fitness Test], or perform certain tasks . . . the evidence strongly indicates that [he] can continue to perform duties similar to those [he had] done in the past, which are appropriate for [his] pay grade." J.A. 304. By letter dated September 16, 2008, the Marine Corps, conducting a Mobilization Potential Screening Board, placed Col. Hoffman on the list for retired reservists awaiting pay at age sixty.

On July 7, 2009, Col. Hoffman sought review from the Board of Corrections for Naval Records ("BCNR") requesting relief from the Formal PEB decision and that the BCNR correct his record reflecting that he is "unfit for duty" and to place him on permanent disability. J.A. 153. On December 21, 2010, the BCNR informed Col. Hoffman that after considering all of the information provided, including an advisory opinion by the NCRB, his application had been denied. The BCNR found the evidence supported the Formal PEB's conclusion that Col. Hoffman was "Fit" for duty. It also found that the record did not support a finding of incurrence of amyloidosis while on active duty. Col. Hoffman sought reconsideration of the BCNR decision on February 22, 2011, which was denied on July 11, 2011. Thereafter, Col. Hoffman appealed directly to the Secretary of the Navy for reconsideration. On September 7, 2011, the Secretary rejected his request.

On January 19, 2012, Col. Hoffman instituted the underlying suit invoking the jurisdiction of the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491 (2006) and 10 U.S.C. § 1201. *See Fisher v. United States*, 402 F.3d 1167, 1174–75 (Fed. Cir. 2005) ("Section 1201 enables the Secretary of a military branch to authorize disability retirement pay for service members on active duty . . . . [Therefore, § 1201 is money-mandating sufficient to trigger Tucker Act jurisdiction] when the requirements of the statute are met."). The parties filed

cross-motions for judgment on the administrative record. Col. Hoffman argued that the BCNR decision was both procedurally and substantively flawed and should be set aside. In particular, he contended that the Court of Federal Claims reverse the "Fit" determination, that he should be placed on the Permanent Disability Retired List with a rating of 100 percent disabled effective January 3, 2006, and that he was entitled to retroactive disability retirement pay from January 3, 2006 forward. The government argued that the fitness determination is supported by substantial evidence. The Court of Federal Claims found in favor of the government.

On January 17, 2013, Col. Hoffman filed a motion for reconsideration, which was denied on April 17, 2013. Col. Hoffman appeals, pro se, the decision of the Court of Federal Claims. This court has jurisdiction under 28 U.S.C. § 1295(a)(3) (2012).

## DISCUSSION

This court reviews legal determinations of the Court of Federal Claims, such as a judgment on the administrative record, de novo. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004). We therefore apply the same standard of review as the Court of Federal Claims: we will not disturb the BCNR's decision unless we find it to be arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Id.*

Section 1552 of title 10 gives military secretaries power to correct military records using civilian boards. It reads, in relevant part:

(a)(1) The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2) [dealing with enlistment and promotion of enlisted soldiers]

> such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department. The Secretary of Homeland Security may in the same manner correct any military record of the Coast Guard.

10 U.S.C. § 1552 (2006).

"Each military department has issued regulations that govern the operation and procedures of its board for the correction of military records." *Porter v. United States*, 163 F.3d 1304, 1311 (Fed. Cir. 1998). In rendering a decision, a military records corrections board, like the BCNR, must determine "[w]hether the applicant has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record." 32 C.F.R. § 865.4(l)(4). Here, in order to obtain disability retirement benefits, Col. Hoffman seeks to correct the determinations the BCNR made when reviewing the Formal PEB findings; specifically, the "Fit" determination and the finding that his disease was not incurred during active duty.

In that vein, Col. Hoffman's appeal raises the following issues: (1) whether the Court of Federal Claims properly sustained BCNR's decision that Col. Hoffman was "Fit" notwithstanding his amyloidosis; (2) whether the Court of Federal Claims properly sustained BCNR's determination that Col. Hoffman did not incur amyloidosis while on active duty; and (3) whether the Court of Federal Claims properly held that Col. Hoffman was not prejudiced by alleged delays and procedural errors in his disability processing. We turn to these issues seriatim.

The record supports BCNR's "Fit" determination. The "responsibility for determining who is [F]it or [U]nfit to serve in the armed services is not a judicial province; and [ ] courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v.*

*United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983). "Fit" and "Unfit" are terms of art within the Department of Defense Disability Evaluation System ("DES"). "A [s]ervice member shall be considered [U]nfit when the evidence establishes that the member, due to physical disability, is unable to reasonably perform the duties of his or her office, grade, rank, or rating . . . to include duties during a remaining period of [r]eserve obligation." Department of Defense Instructions ("DoDI") 1332.38 ¶ E3.P3.2.1 (November 1996).

Here, the Court of Federal Claims took note of the "administrative . . . nature" of Col. Hoffman's billet as a Field Historian, and determined that there was evidence supporting the opinion that Col. Hoffman was capable of performing the tasks of that billet. *Hoffman*, 108 Fed. Cl. at 117. Significant to this determination was that the advisory opinion from the NCRB to the BCNR indicated Col. Hoffman had recovered from amyloidosis "to a sufficient degree that he was capable of fulfilling administrative duties appropriate for his office, grade, rank or rating, despite certain limitations on physical activities described at the time of the contested Formal PEB determination and Col[.] Hoffman's long-term prognosis." *Id.* Specifically, as the Court of Federal Claims noted, treating physicians reported Col. Hoffman's excellent response to stem-cell transplant and chemotherapy by June 2006, and recommended that he begin exercising. By April 2007, Col. Hoffman was in complete remission. Despite some residual side effects, the treating physicians indicated that they expected Col. Hoffman's "cardiac function to stabilize and possibly improve over time." *Id.*

Col. Hoffman contends that it was improper for the BCNR to consider the 2008 Formal PEB "Fit" decision without considering earlier decisions by the Marine Corps Mobilization Command and CHBUMED that found him "not physically qualified." As the Court of Federal Claims found, however, Col. Hoffman's "reliance on these earlier

evaluations ignores the improvements to his health." *Id.* Indeed, the record reflects that Col. Hoffman had been working as a civilian historian for the Department of the Army, similar to his Marine Corps billet as a Field Historian, during much of the relevant time period. This fact alone may be reasonably adequate to support the Formal PEB "Fit" determination. *See Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

That the record lacks "a comprehensive physical examination" is also not convincing. Appellant's Br. 48. We agree with the Court of Federal Claims that "[t]here is no evidence in the record to suggest that the Formal PEB or the BCNR did not have a thorough and complete understanding of Colonel Hoffman's health status on which to find him 'Fit' for continued service." *Hoffman*, 108 Fed. Cl. at 120. The record informs this court that the PEB and the BCNR had a complete understanding of Col. Hoffman's health. For example, the Formal PEB noted Col. Hoffman's amyloidosis, back and shoulder issues, and periodic numbness in both arms. The Formal PEB determined that Col. Hoffman was not "impaired by his disease process to the point that he [was] disabled in the performance of his duties." J.A. 119. It was also determined that Col. Hoffman was in "remission and that [he] experiences only occasional cardiac conduction abnormalities due to the amyloid fibrils in the heart . . . [that] are not disabling." *Id.* The PEB presumably had "all medical and non-medical information necessary to evaluate" Col. Hoffman's case as required by Navy regulations. SECNAVINST 1850.4E ¶ 3102(c).

The BCNR likewise noted "despite limitations on physical activities . . . neither an inability to deploy, complete a [physical fitness test], or perform more arduous physical tasks associated with an Infantry [military operational specialty], nor the prognosis of possible future

deterioration precludes a determination of Fit." J.A. 170. Similar to the PEB, the BCNR presumably had the full record and considered it to the extent necessary. *Melendez Camilo v. United States*, 642 F.3d 1040, 1045 (Fed. Cir. 2011) ("We presume that actions taken by the Correction Board are valid, and the burden is upon the complainant to show otherwise. We further presume that the Correction Board performed its function according to the regulations and considered all of [Appellant's] records.") (citation omitted). Based on this record, the BCNR's decision sustaining the Formal PEB's finding that Col. Hoffman is "Fit" for continued service was not arbitrary, capricious, or otherwise not supported by substantial evidence.

In addition to the "Fit" determination, Col. Hoffman disputes the BCNR's finding that his disease was not incurred during active duty service. Because a service member is only entitled to disability benefits if found "Unfit," SECNAVINST 1850.4E ¶ 2014, the issue of whether or not Col. Hoffman's illness was properly characterized as incurred during active duty is moot in light of the "Fit" finding. In any event, when reviewing the BCNR's determination that Col. Hoffman's amyloidosis was not incurred during active duty from 2000 through 2002, we discern no error. The BCNR considered evidence of symptoms Col. Hoffman suffered during the relevant period and did not find them dispositive. For instance, the BCNR noted that there was evidence in the record of "swelling of the lower extremities," but determined that it "is a common side-effect of the use of [ibuprofen]" and that "gingivitis is common among the middle aged . . . includ[ing] those who follow good oral hygiene practices." J.A. 175. The BCNR's decision was not arbitrary, capricious, or otherwise unsupported by substantial evidence.

Col. Hoffman points to procedural errors, but the Court of Federal Claims is correct that no such errors

were committed. Specifically, Col. Hoffman contends that he should have been afforded a Medical Evaluation Board ("MEB") during his DES processing. As the Court of Federal Claims determined, however, inactive duty reservists, like Col. Hoffman, are not entitled to an MEB. A medical evaluation by an MEB is required for a service member with an NOE or when, among other things, the member is on active duty for a period of more than 30 days or the reservist is referred to the DES for a duty-related impairment. DoDI 1332.38 ¶ E3.P1.2.2. By contrast, "either a physical examination or a[n] MEB is sufficient when a reserve component member is referred for a condition unrelated to the member's military status and performance of duty." *Id.* At the time of his initial processing, Col. Hoffman was an inactive reservist without an NOE on file, and the CHBUMED June 7, 2006, letter finding Col. Hoffman as "not physically qualified" indicates that it was understood he suffered from non-duty related conditions under SECNAVINST 1850.4E ¶ 3201(b)(2) ("[A]n inactive duty reservists who has not been given an NOE and who has been determined by the CHBUMED to be 'Not Physically Qualified' (NPQ) for active duty or retention will be referred . . . to the Informal PEB for final determination of physical condition."). Accordingly, Col. Hoffman's DES processing did not require him to receive an MEB.

Lastly, Col. Hoffman argues that he was not afforded a full and fair hearing. The record reflects that three review boards and the Court of Federal Claims provided opportunities for Col. Hoffman to state his case and to present evidence. Col. Hoffman's allegations of procedural errors and undue emphasis on administered medical tests (or the lack thereof) do not give rise to a failure of a full and fair hearing. On the contrary, the record shows substantial evidence supporting the BCNR's decision that there was no probable material error or injustice when the Formal PEB determined that Col. Hoffman was "Fit"

for service.  We have considered Col. Hoffman's remaining arguments and find them unpersuasive or waived.  *Cf. Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("[T]his court does not 'review' that which was not presented to the district court.").

## CONCLUSION

We appreciate Col. Hoffman's plight throughout this long, difficult administrative and judicial process.  However, "questions of the fitness of an officer to serve on active duty, and in what capacity the officer should serve, are [generally] not for the courts to decide" anew.  *Lewis v. United States*, 458 F.3d 1372, 1377 (Fed. Cir. 2006).  We look to the record and examine whether the BCNR's decision is supported.  Here, the BCNR, in its capacity as a tribunal specializing in these matters, made a determination that, on this record, was not arbitrary or capricious, and supported by substantial evidence.  This court is bound by law to limit our inquiry as such, and in this case, as the Court of Federal Claims concluded, the Board's decision cannot be disturbed.

## **AFFIRMED**

No costs.